# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NICHOLAS JAMES PATTON,

Defendant-Appellant.

FOR PUBLICATION
August 2, 2018
9:00 a.m.

No. 341105
Berrien Circuit Court
LC No. 2017-001164-FH

Before: RONYANE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

MARKEY, J.

Defendant appeals by leave granted the trial court's order denying his motion to dismiss two counts of violating the sex offenders registration act (SORA), MCL 28.721 *et seq.*, on the basis that MCL 28.727(1)(h) (requiring reporting "[a]ll telephone numbers registered to the individual or routinely used by the individual"), and MCL 28.727(1)(i) (requiring reporting "[a]ll electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual"), were unconstitutionally vague. Following a preliminary examination, defendant was bound over to circuit court. After briefing and argument of the parties, the trial court ruled that the SORA requirements at issue are not unconstitutionally vague. The trial court also found defendant's ex post facto challenge meritless and issued an order denying defendant's motion to dismiss. We affirm.

Defendant is subject to the requirements of SORA based on his conviction by guilty plea on November 18, 2009, to second-degree criminal sexual conduct, MCL 750.520c(2)(b), alleged to have occurred on June 26, 2009. According to testimony at the preliminary examination, while defendant was on parole for that offense, his parole agent, Jeanice McConomy, received information that defendant had a cellular telephone that he was using to access the Internet, which was a violation of his parole conditions. During a home visit by McConomy on February 16, 2017, defendant initially denied having a cellular telephone. A search of defendant's person, however, revealed a cellular telephone in defendant's pocket that defendant then admitted was his. Defendant admitted that the cellular telephone could access the Internet, but he claimed that he only accessed the Internet to play games. Defendant denied accessing the Internet on the cellular telephone to visit pornographic websites. Defendant also admitted to McConomy that he did not register the cellular telephone or the cellular telephone number as required by SORA, although he did update his address and his employment. McConomy seized the cellular

-1-

telephone and contacted police to arrest defendant for a parole violation. McConomy turned the cellular telephone over to Detective Cory Peek of the Berrien County Sheriff's Department.

Detective Peek was received at the preliminary examination as an expert witness qualified in the area of forensic examination of electronic devices. Detective Peek confirmed that the cellular telephone was a "smart phone" that was capable of accessing the Internet. He used a program called Cellebrite to extract information from the cellular telephone. Detective Peek testified that he found "selfies" photographs of defendant on the cellular telephone. He also discovered pornographic pictures, several hundred e-mails—some of which were from dating websites—and an e-mail account with the address Littlenick642@yahoo.com with the name Nicholas Patton associated with it. Detective Peek also discovered a second e-mail address, Fearlove642@yahoo.com. After this testimony, the trial court, sitting as examining magistrate, bound defendant over to circuit court on both counts.

In defendant's motion to dismiss the charges, he claimed that the SORA provisions that mandated his registration of cellular telephone numbers registered to him or routinely used by him and of any e-mail accounts assigned to him or routinely used by him violated his state and federal due-process rights because the mandates were unconstitutionally vague. He also claimed that the SORA provisions were unconstitutional because they violated the Ex Post Facto Clauses of the federal and state Constitutions.

The prosecution argued that it was not relying on that part of the statutory prohibition of "routinely used" that this Court recently found unconstitutionally vague. See *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Rather, the prosecution argued that the phrase "routinely used" could be judicially severed from the statute to save it from constitutional infirmity. Thus, the prosecution argued that it was only proceeding under the "register[ed] to" and "assigned to" language of MCL 28.727(1)(h) and (i). The prosecution also argued that the SORA provisions did not violate the Ex Post Facto Clauses because SORA was not punitive. They are part of a civil remedy or protection.

The trial court agreed with the prosecution's arguments, noting "that particular subsection of the statute should not be tossed out because one portion was found to be unconstitutionally vague. So I have no problem with allowing the prosecution to go forward on the portion of the statute . . . that is not unconstitutionally vague." The trial court also concluded that the statute was not an unconstitutional ex post facto law because the SORA provision that defendant was accused of violating did not reveal a criminal purpose. Accordingly, the trial court entered its order denying defendant's motion to dismiss. Defendant now appeals by leave granted.

## I. STANDARD OF REVIEW

A trial court's decision regarding a motion to dismiss is reviewed for an abuse of discretion, *People v Herndon*, 246 Mich App 371, 389; 633 NW2d 376 (2001), which occurs when the court chooses an outcome that is outside the range of reasonable and principled outcomes, *People v Bass*, 317 Mich App 241, 256; 893 NW2d 140 (2016). This Court reviews de novo the meaning of a statute, *People v Pfaffle*, 246 Mich App 282, 295; 632 NW2d 162 (2001), and also reviews de novo constitutional issues, *Solloway*, 316 Mich App at 184.

## II. DISCUSSION

### A. DUE PROCESS

We conclude that the trial court properly severed the unconstitutionally vague phrase "routinely used" from MCL 28.727(1)(h) and (i). Consequently, the trial court correctly ruled that the prosecution could continue under the "registered to" and "assigned to" portions of those SORA requirements that were not unconstitutionally vague. We further hold that the statutory provisions did not violate the Ex Post Facto Clauses of the federal and state Constitutions.

Defendant was charged with violating the reporting requirements of SORA under MCL 28.727(1)(h) and (i), which state, in pertinent part:

> (1) . . . All of the following information shall be obtained or otherwise provided for registration purposes:
>
> * * *
>
> (h) All telephone numbers registered to the individual or routinely used by the individual.
>
> (i) All electronic mail addresses and instant message addresses assigned to the individual or routinely used by the individual and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system.

Our Supreme Court in *People v Moreno*, 491 Mich 38, 45; 814 NW2d 624 (2012), described pertinent principles of statutory construction applicable in all cases:

> When interpreting statutes, this Court must ascertain and give effect to the intent of the Legislature. The words used in the statute are the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the context within which they are used in the statute. In interpreting a statute, this Court avoids constructions that would render any part of the statute surplusage or nugatory. [*Id*. (citations and quotation marks omitted).]

Defendant first argues that MCL 28.727(1)(h) and (i) are unconstitutionally vague under the due process clauses of the United States and Michigan's Constitution. US Const, Amend XIV; Mich Const 1963, art 1, § 17. When reviewing a constitutional challenge to a statute, this Court must construe it to be constitutional unless its unconstitutionality is clearly apparent. *Solloway*, 316 Mich App at 184. A statute may be unconstitutionally vague if "(1) it does not provide fair notice of the conduct proscribed, (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, or (3) its coverage is overly broad and impinges on First Amendment Freedoms." *People v Vronko*, 228 Mich App 649, 652; 579 NW2d 138 (1998). A statute is not unconstitutionally vague when "the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning." *Id*. at 653. Further, a

statute may survive constitutional scrutiny when its words have more than one meaning, and a statute need not define an offense with mathematical precision. *People v Lawhorn*, 320 Mich App 194, 200; 907 NW2d 832 (2017). "The proper inquiry is not whether the statute may be susceptible to impermissible interpretations, but whether the statute is vague as applied to the conduct" alleged in the instant case. *Vronko*, 228 Mich App at 652.

The Legislature has specifically provided for the use of severability when any part of a statute is determined to be invalid if appropriate to avoid rendering the remaining parts of the statute meaningless. MCL 8.5, which states:

> In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

> If any portion of an act or the application thereof to any person or circumstances shall be found to be invalid by a court, such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable.

In this case, defendant argues, as he did at his motion to dismiss, that on the basis of this Court's holding in *Solloway*, 316 Mich App at 187, this Court should hold that the part of SORA defendant was charged with violating should be held unconstitutionally vague. The prosecution responded to defendant's motion to dismiss and now argues that *Solloway* is distinguishable because the *Solloway* Court only addressed the words "routinely used" in the statute, not the terms "registered to" or "assigned to" used in MCL 28.727(1)(h) and (i). The prosecution argues that the charges against defendant are based only on the "registered to" and "assigned to" portions of the statutory prohibition, not the alternative "routinely used" language, and that the trial court properly exercised its authority to sever the invalid portions of the statute from the valid remainder to allow the prosecution against defendant to continue. Like the trial court, we agree with the prosecution's argument.

In *Solloway*, the defendant was on probation because of a conviction of fourth-degree criminal sexual conduct and was required to be registered under SORA. *Solloway*, 316 Mich App at 179. The police searched the defendant's house and found a cellular telephone that was *registered in a relative's name*. *Id*. The defendant also admitted that he had an e-mail account *in his father's name*. *Id*. at 180. The *Solloway* Court found persuasive the case of *Doe v Snyder*, 101 F Supp 3d 672, 688-713 (ED Mich, 2015),[1] which addressed, *inter alia*, the phrase

---

[1] Opinions of the lower federal courts and foreign jurisdictions are not binding but may be considered persuasive. See *Abela v Gen Motors Corp,* 469 Mich 603, 606-607; 677 NW2d 325 (2004); *People v Campbell*, 289 Mich App 533, 535; 798 NW2d 514 (2010).

"routinely used" in MCL 28.727(1)(h) and (i). *Solloway*, 316 Mich App at 187. After discussing *Doe*, this Court held:

> In this case, the phrase "routinely used," as found in MCL 28.727(1)(h) and (i) renders those statutory provisions vague. We find the analysis in *Doe*, 101 F Supp 3d at 688-713, persuasive. Given the dictionary definition of "routinely," as discussed in that case, *id*. at 688, it is evident that law enforcement officers and judges could hold different views of how often a telephone number or e-mail address must be used by an individual to be "routinely used" under the statute. We thus agree with the holding in *Doe* and find that the provisions under which defendant was convicted are unconstitutionally vague. Therefore, defendant's convictions for failing to comply with SORA are vacated. [*Id*. at 187.]

Thus, the *Solloway* Court only held unconstitutionally vague the alternative part of MCL 28.727(1)(h) and (i) requiring registration of "telephone numbers" and "electronic mail addresses and instant message addresses" that are "routinely used" by the person subject to the requirements of SORA. The *Solloway* Court did not address or hold unconstitutionally vague the parts of MCL 28.727(1)(h) and (i) requiring registration of "telephone numbers" and "electronic mail addresses and instant message addresses" that are "registered to" or "assigned to" the person subject to the requirements of SORA. This view of *Solloway* is buttressed by the fact that the Court found *Doe* persuasive, which also only addressed the "routinely used" alternative language of MCL 28.727(1)(h) and (i). Moreover, our interpretation is further supported by the fact that the evidence against the defendant, in *Solloway* consisted of a cellular telephone that was registered to a relative, not the defendant, and an e-mail account that was registered to the defendant's father, not to the defendant. Thus, the prosecution in *Solloway* could only proceed against the defendant under the "routinely used" alternative language of MCL 28.727(1)(h) and (i). Consequently, *Solloway* is distinguishable from the facts of the instant case because the evidence showed that defendant personally purchased the cellular telephone; there were selfies of defendant on the cellular telephone, and at least one of the e-mail addresses found on the cellular telephone was registered in defendant's name. The present case is in direct contrast to the prosecution in *Solloway*, which relied entirely on the "routinely used" alternative language of MCL 28.727(1)(h) and (i), and the evidence only showed that a telephone belonged to a family member and an e-mail account was registered in the name of the defendant's father.

This reasoning is further supported by the language of the statute. It uses the term "or" in separating the phrases "registered to" and "assigned to" from the phrase "routinely used." MCL 28.727(1)(h) and (i). The Legislature's use of the disjunctive term "or" evidences that there are two ways to violate the statute. See *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011). That is, defendant could violate MCL 28.727(1)(h) by failing to register a telephone number registered to him; he could separately violate the statute by failing to register a telephone number that he routinely used. The same analysis applies to subsection (i) regarding e-mail and instant message addresses. To conclude that this Court's decision in *Solloway* applied to all the provisions of MCL 28.727(1)(h) and (i) despite being separated by the disjunctive term "or" would render the portions of the statute stating "registered to" and "assigned to" "surplusage or nugatory." *Moreno*, 491 Mich at 45. It would also run contrary to the Legislative directive to sever invalid parts of a statute from the remainder whenever possible. MCL 8.5.

The trial court in this case properly exercised its authority to sever invalid parts of the statute by finding the "routinely used" portion of MCL 28.727(1)(h) and (i) were unconstitutionally vague but that the remaining portions of the statute relating to "registered to" or "assigned to" regarding phone numbers and e-mail and instant message accounts were valid. See MCL 8.5; *People v McMurchy*, 249 Mich 147, 158; 228 NW 723 (1930) (When one part of a statute is held unconstitutional, the remainder of the statute remains valid unless all parts of the statute are so interconnected that the Legislature would likely not have passed the one part without the other.). We conclude that the trial court's ruling was not error. Only a portion of MCL 28.727(1)(h) and (i) is unconstitutionally vague, *Solloway*, 316 Mich App at 187, and the invalid portion articulates a separate, alternative method of violating the statute. The invalid portion is not so interconnected with the other portions as to render them also invalid. Thus, the trial court properly severed the invalid portions and saved the remainder. So, we conclude that the remaining portions of the statute, including the "registered to" and "assigned to," under which the present prosecution is brought, are constitutionally valid. See MCL 8.5; *McMurchy*, 249 Mich at 158.

Moreover, Merriam-Webster's dictionary defines "registered" as "having the owner's name entered" and "recorded as the owner of." *Merriam-Webster's Collegiate Dictionary* (11th ed). The same source defines "assigned" as "to consider to belong to." *Id*. When one applies these definitions to the terms of MCL 28.727(1)(h) and (i), it is clear that an offender subject to the SORA reporting requirements must report any telephone number that he is the "recorded owner of" or that which his name is "entered" as the owner. In this case, as discussed above, defendant admitted that he personally purchased the cellular telephone with money he had earned. Thus, defendant was the recorded owner of the cellular telephone number or had his name entered as the owner of the cellular telephone number. Also, defendant must report any e-mail addresses "consider[ed] to belong to" him. In this case, there was at least one e-mail address specifically registered to defendant by name, which must be considered to belong to defendant.

When the terms of MCL 28.727(1)(h) and (i) on which the prosecution in this case is based are considered in light of their common meaning or in consultation with dictionary definitions, it is clear that they are not unconstitutionally vague. See *Solloway*, 316 Mich App at 185; see also *Vronko*, 228 Mich App at 653 ("A statute is not vague if the meaning of the words in controversy can be fairly ascertained by reference to judicial determinations, the common law, dictionaries, treatises, or their generally accepted meaning."). Defendant was provided fair notice of the conduct proscribed—that he must register any telephone number that he was the recorded owner of or that his name was entered as the owner of, and he must register any e-mail address assigned to him that it would be considered to belong to him. The terms at issue did not provide the trier of fact with unstructured or unlimited discretion to determine whether an offense had been committed. The trier of fact would need to determine only if defendant were the owner of or had his name entered as the owner of any telephone numbers or if any e-mail addresses were considered to belong to defendant.

Finally, the scope of MCL 28.727(1)(h) and (i) as limited by severing "routinely used" was not overly broad to infringe on defendant's First Amendment freedoms. The scope of the statute only applied to telephone numbers owned or entered as being owned by defendant. And the coverage only applied to e-mail addresses considered to belong to defendant. Considering

these factors in light of the facts that defendant admitted that the cellular telephone was his, that he purchased the cellular telephone with his own money from his employment, that there were selfies of defendant on the cellular telephone, and that at least one e-mail address was directly linked to defendant by name, we conclude that the trial court correctly ruled that the prosecution in this case could be continued based on the "registered to" and "assigned to" terms of MCL 28.727(1)(h) and (i) without application of the "routinely used" provisions of the statute. We hold that because the "registered to" and "assigned to" provisions of MCL 28.727(1)(h) and (i) are separate, severable provisions, they are not unconstitutionally vague.

## B. EX POST FACTO LAW

Defendant next argues that application of MCL 28.727(1)(h) and (i) violated the Ex Post Facto Clauses of the United States and Michigan Constitutions. US Const, art 1, § 10 states in relevant part, "No State shall . . . pass any . . . ex post facto Law . . . ." Mich Const 1963, art 1, § 10 states, "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."

There are four categories of ex post facto laws: (1) any law that punishes an act that was innocent when the act was committed, (2) any law that makes an act a more serious criminal offense than when committed, (3) increases the punishment for a crime committed before the law was passed, or (4) any law that allows the prosecution to convict a defendant on less evidence than was required when the act was committed. *People v Callon*, 256 Mich App 312, 317; 662 NW2d 501 (2003), citing *Calder v Bull*, 3 US 386, 390; 1 L Ed 648; 3 Dall 386 (1798). "All ex post facto laws share two elements: (1) they attach legal consequences to acts before their effective date, and (2) they work to the disadvantage of the defendant." *Id* at 318, citing *Weaver v Graham*, 450 US 24, 29; 101 S Ct 960; 67 L Ed 2d 17 (1981). The crucial question in determining whether a law violates the Ex Post Facto Clause " 'is whether the law changes the legal consequences of acts completed before its effective date.' " *Id*., quoting *Carmell v Texas*, 529 US 513, 519-520; 120 S Ct 1620; 146 L Ed 2d 577 (2000), and *Weaver*, 450 US at 31.

In this case, defendant originally became subject to SORA after his conviction for second-degree criminal sexual conduct in 2009. MCL 28.727(1)(h) and (i) were added to SORA by 2011 PA 18 and became effective July 1, 2011. The 2011 amendments required defendant, who was already subject to SORA, to comply with its new requirements. 2011 PA 17 and 18. Thus, the 2011 amended SORA requirements retroactively applied to defendant. See *Does #1-5 v Snyder*, 834 F3d 696, 698 (CA 6, 2016). So, the question becomes whether the retroactive application of new SORA requirements violates the Ex Post Facto Clauses of the United States and Michigan Constitutions.

The United States Supreme Court in *Smith v Doe*, 538 US 84, 92; 123 S Ct 1140; 155 L Ed 2d 164 (2003), discussing Alaska's SORA, set forth a two-step inquiry for determining

whether retroactive application of a law violates the Ex Post Facto Clause of the federal constitution.[2] Under that two-step inquiry, a court must determine:

> [W]hether the [L]egislature meant the statute to establish civil proceedings. If the intention of the [L]egislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate [the Legislature's] intention to deem it civil. [*Id*. (quotation marks and citations omitted).]

Defendant cites *People v Temelkoski*, 307 Mich App 241; 859 NW2d 743 (2014), rev'd 501 Mich 960; as potentially providing insight to this issue. But that case is clearly distinguishable from the instant case.

In *Temelkoski*, our Supreme Court's concluded that the retroactive application of SORA to the defendant was contrary to principles of due process developed in the context of plea bargaining. *Temelkoski*, 501 Mich at 961; citing *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971). The defendant pleaded guilty in 1994 to one count of second-degree criminal sexual conduct and was sentenced as a youthful trainee under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq*. The version of HTYA in effect when the defendant entered his guilty plea provided that a trainee would not suffer any civil disability or loss of right or privilege because of that assignment. After his plea, the Legislature adopted SORA, which clearly imposes a civil disability. *Temelkoski*, 501 Mich at 961. The Court held that the "retroactive application of SORA deprived defendant of the benefits under HYTA to which he was entitled and therefore violated his constitutional right to due process." *Id*. The Court reasoned that the retroactive application of SORA would "disturb[] settled expectations based on the state of the law" at the time the defendant's plea, resulting in "manifest injustice" and violating due process. *Id*. (citation omitted). Because the *Temelkoski* Court did not rely on the Ex Post Facto Clause or case law applying its principles, it is distinguishable from the instant case.

Under principles developed under the Ex Post Facto Clauses, and specifically guided by *Smith v Doe*, 538 US 84, the 2011 amendment at issue in this case is not an ex post facto law. First, the Legislature did not intend SORA to be a criminal punishment. MCL 28.721a, titled "Legislative declarations; determination; intent," states in relevant part, "The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." Thus, the Legislature's intent by enacting the registration requirements of SORA was to "enact a regulatory scheme that is civil and nonpunitive," *Smith*, 538 US at 92, by providing law enforcement and the public with tools to monitor sex offenders. Thus, although SORA contains criminal sanctions, it is not so different from Alaska's SORA reviewed in *Smith*, 538 US 84, to conclude that SORA's intent is punitive. See *Snyder*, 834 F3d at 700-701.

---

[2] "Michigan does not interpret its constitutional provision more expansively than its federal counterpart." *Callon*, 256 Mich App at 317.

Second, we conclude that MCL 28.727(1)(h) and (i) are not "so punitive either in purpose or effect as to negate [the Legislature's] intention to deem it civil." *Smith*, 538 US at 92. Defendant urges with respect to this second prong of the *Smith* test that this Court adopt the reasoning of the Sixth Circuit Court of Appeals in *Snyder*, 834 F3d 696. We find, however, that *Snyder* is distinguishable from the instant case regarding this part of the *Smith* test.

In *Snyder*, the Sixth Circuit Court of Appeals addressed whether provisions of SORA constituted punishment in violation of the Ex Post Facto Clause of the United States Constitution. *Id*. at 699-700. The *Snyder* court conducted the two-step inquiry that the Supreme Court applied when analyzing whether Alaska's SORA violated the Ex Post Facto Clause. "[T]he test we must apply . . . is quite fixed: an ostensibly civil and regulatory law, such as SORA, does not violate the Ex Post Facto clause unless the plaintiff can show 'by the clearest proof' that 'what has been denominated a civil remedy' is, in fact, 'a criminal penalty,' " *Id*. at 700, citing *Smith*, 538 US at 92. The court first determined that SORA did not evince a punitive intent. *Id*. It then analyzed whether, despite its lack of punitive intent, SORA had the effect of being punitive. *Id*. at 700-701. The *Snyder* Court then reviewed the five "most relevant" factors as stated in *Smith*, 538 US at 97: (1) whether the law inflicts what has been regarded in our history and traditions as punishment; (2) whether the law imposes an affirmative disability or restraint; (3) whether the law promotes the traditional aims of punishment; (4) whether the law has a rational connection to a nonpunitive purpose; and (5) whether the law is excessive with respect to its purpose. *Snyder*, 834 F3d at 701. After its review, the court concluded "Michigan's SORA imposed punishment," which "may never be retroactively imposed or increased." *Id*. at 705. Consequently, the court held that "[t]he retroactive application of SORA's 2006 and 2011 amendments" to the plaintiffs in that case was an unconstitutional violation of the Ex Post Facto Clause. *Id*. at 706.

In reaching its conclusion, that SORA's 2006 and 2011 amendments were ex post facto laws, the *Snyder* Court observed:

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting, all supported by—at best—scant evidence that such restrictions serve the professed purpose of keeping Michigan communities safe, is something altogether different from and more troubling than Alaska's first-generation registry law. SORA brands registrants as moral lepers solely on the basis of a prior conviction. It consigns them to years, if not a lifetime, of existence on the margins, not only of society, but often, as the record in this case makes painfully evident, from their own families, with whom, due to school zone restrictions, they may not even live. It directly regulates where registrants may go in their daily lives and compels them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information. [*Snyder*, 834 F3d at 705.]

The instant case is distinguishable from *Snyder*,[3] because, unlike the plaintiffs in *Snyder*, defendant in this case only challenges the reporting of telephone numbers and e-mail addresses. As the quotation from *Snyder* above states, the court considered additional provisions of SORA, most importantly, the restriction on where offenders could live, work, and loiter, as well as the tier classification, to find that SORA had a punitive effect. In concluding that SORA was akin to punishment, the court noted that the amended SORA included provisions that had "much in common with banishment and public shaming," employs geographical restrictions, " and ha[ve] a number of similarities to parole/probation." *Id*. at 701, 703. Defendant in this case does not challenge the restrictions on where he can live, work, or visit. Nor did defendant challenge the tier system. He only challenges the part of the 2011 amendments requiring the reporting of telephone numbers and e-mail addresses. The mandated reporting of telephone numbers registered to him and e-mail addresses assigned to him does not have anything in common with banishment, public shaming, or employing geographical restrictions; therefore, we conclude that the provisions of SORA that defendant challenges in this case are not what has been regarded in our history and tradition as punishment.

Additionally, MCL 28.727(1)(h) and (i) do not impose an affirmative disability or restraint. Those subsections do not prevent or restrain defendant from having a cellular telephone number or an e-mail address—they only mandate that defendant must register them if he does. Further, the subsections do not promote the traditional aims of punishment such as incapacitation, retribution, and specific and general deterrence. See *Snyder*, 834 F3d at 704. Again, the reporting requirements of subsections (1)(h) and (i) do not deter an offender from having a cellular telephone or e-mail address, they only require that an offender register phones owned or entered as being owned by the offender and any e-mail addresses belonging to the offender. These requirements simply further the proper civil regulatory scheme of "provid[ing] law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." MCL 28.721a; see also *Snyder*, 834 F3d at 700-701.

As just noted, with respect to the fourth "most relevant" factor, see *Snyder*, 834 F3d at 701, citing *Smith*, 538 US at 97, subsections (1)(h) and (i) have a rational connection to a nonpunitive purpose. As stated by the Legislature's statement of intent, the purpose of the telephone number and e-mail address reporting requirements is to give law enforcement and the public tools to help monitor an offender's behavior. MCL 28.721a. We conclude that registration of phones owned or entered as being owned by an offender, and registration of e-mail addresses belonging to an offender is not punitive. As the trial court in this case analogized, every driver in this state must register his or her motor vehicle with the state. Although these requirements may be unpleasant or cause momentary interruption, they are not a punishment for a citizen's choice to own and drive a motor vehicle. Similarly, the same could be said for

---

[3] "Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts." *Abela,* 469 Mich at 606 (citation omitted). The decisions of lower federal courts may be considered if the court's analyses and conclusions are persuasive. *Id*. at 607.

-10-

registering telephone numbers and e-mail addresses to comply with the requirements of MCL 28.727(1)(h) and (i). So, simply requiring registration of telephone numbers and e-mail addresses does not evidence a punitive intent or effect.

The last of the "most relevant" factors, *Smith*, 538 US at 97, is whether the registration requirements are excessive with respect to its stated nonpunitive purpose? We conclude that they are not. Again, the purpose of MCL 28.727(1)(h) and (i) is to provide tools for monitoring an offender. An offender is required to register telephone numbers and e-mail addresses owned or belonging to the offender. Generally speaking, people do not frequently obtain a new telephone number or e-mail address. Thus, we find that the registration requirements of MCL 28.727(1)(h) and (i) are not excessive with respect to SORA's stated civil nonpunitive purpose. Because defendant in this case only challenges the registration requirements for telephone numbers and e-mail addresses, as opposed to the living and working restrictions and the tier system as did the plaintiffs in *Snyder*, we conclude that *Snyder* provides little guidance to this Court regarding the retroactive application of the requirements of MCL 28.727(1)(h) and (i). We therefore decline to adopt the analysis of *Snyder* as defendant urges.

## C. CONCLUSION

In summation, we conclude that the "registered to" and "assigned to" portions of MCL 28.727(1)(h) and (1) are separate provisions that may properly be severed from the invalid "routinely used" portions of the statute. See MCL 8.5; *McMurchy*, 249 Mich at 158. The "registered to" and "assigned to" portions of MCL 28.727(1)(h) and (1) provide fair notice of the conduct proscribed, do not confer on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed, and their scope is not so overly broad as to infringe on constitutional rights. Accordingly, we conclude that the "registered to" and "assigned to" provisions of MCL 28.727(1)(h) and (i) are not unconstitutionally vague. Therefore, the prosecution of this case under MCL 28.727(1)(h) and (i), as interpreted, may proceed under the constitutionally valid portions of the statute.

We further hold that although MCL 28.727(1)(h) and (i) applied retroactively to defendant, those provisions further a civil regulatory scheme and are not punitive in effect. Therefore we hold that the "registered to" and "assigned to" provisions of MCL 28.727(1)(h) and (i) do not violate the Ex Post Facto Clauses of the federal and state Constitutions. See *Smith*, 538 US at 92, 97, 105-106.

We affirm and remand for further proceedings. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

-11-