*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 29, 2020

Plaintiff-Appellee,

v

No. 348863
Wayne Circuit Court
LC No. 18-007293-01-FH

BRADLY THOMAS PETERSON,

Defendant-Appellant.

Before: METER, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of disturbing the peace, MCL 750.170, for which he was sentenced to 90 days in jail, with credit for 118 days served. On appeal, defendant argues that his actions were constitutionally protected by the First Amendment and so MCL 750.170 was unconstitutional as applied to him. He also argues that the statute is unconstitutional on its face and that he is entitled to a new trial because the jury instructions were erroneous and his trial attorney rendered ineffective assistance for failing to object to those instructions. We conclude that defendant's public threats of violence are not constitutionally protected and that he could be properly convicted based on those threats. However, the jury also heard substantial evidence of other statements made by defendant that are protected speech, and the jury was not properly instructed. Therefore, we remand for a new trial, but defendant fails to carry his burden of showing that MCL 750.170 is facially unconstitutional.

## I. BACKGROUND

On April 12, 2017, defendant went to the 33rd District Court in Woodhaven, Michigan with his brother and girlfriend to provide support for his girlfriend, who was there for sentencing. When the district court judge denied his girlfriend's motion to withdraw her plea, defendant uttered the word "asshole." Defendant was ordered to leave the court building, which he did without protest or incident. He then waited outside the courthouse for his brother and girlfriend.

While outside, defendant paced back and forth and began talking to himself. Robert Williams, a court patron, was also outside smoking a cigarette. Williams testified that defendant stated that he was going to "shoot up the building" and also threatened to shoot Williams.

-1-

Defendant denied threatening anyone and claimed he was merely talking to himself. Williams entered the courthouse and informed Brian Cozzaglio, a court security officer, that defendant was making threats outside. Cozzaglio testified that he was informed by another court patron that defendant stated he "loved" ISIS and Osama bin Laden. Officers from the Woodhaven Police Department were dispatched to the scene.

The officers arrived on the scene and asked defendant "what was going on," to which he replied, "you tell me what the f***'s going on." What happened next is disputed, but the officers eventually took defendant to the ground in an attempt to restrain and arrest him. Defendant was charged with resisting arrest, MCL 750.81d, and disturbing the peace, MCL 750.170. The jury found defendant not guilty of resisting arrest but convicted him of disturbing the peace. This appeal followed.

## II. ANALYSIS

MCL 750.170 provides:

> Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

The First Amendment provides that the government "shall make no law . . . abridging the freedom of speech." US Const, Am 1.[1] "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *People v Vandenberg*, 307 Mich App 57, 63; 859 NW2d 229 (2014) (quotation marks and citation omitted).

"A constitutional challenge to the validity of a statute can be brought in one of two ways: by either a facial challenge or an as-applied challenge." *In re Forfeiture of 2000 GMC Denali and Contents*, 316 Mich App 562, 569; 892 NW2d 388 (2016). "An as-applied challenge . . . alleges 'a present infringement or denial of a specific right or of a particular injury in process of actual execution' of government action." *Bonner v City of Brighton*, 495 Mich 209, 223 n 27; 848 NW2d 380 (2014), quoting *Village of Euclid, Ohio v Ambler Realty Co*, 275 US 365, 395; 47 S Ct 114; 71 L Ed 303 (1926). In First Amendment cases, "[a]n as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v City of Menlo Park*, 146 F3d 629, 635 (CA 9, 1998).

We begin by noting a significant omission in defendant's briefing. Although he argues that everything he said outside the courthouse was protected speech under the First Amendment, he fails to explain how a threat to kill a member of the public and shoot up a courthouse is

---

[1] The First Amendment is applied to the states through the Fourteenth Amendment. *People v Rapp*, 492 Mich 67, 72 n 10; 821 NW2d 452 (2012).

protected. Clearly it is not. Application of the statute so as to criminalize such statements in a public place is not unconstitutional. " '[A] State may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace,' including 'fighting words,' 'inciting or producing imminent lawless action,' and 'true threat[s].' " *TM v MZ (On Remand)*, 326 Mich App 227, 238; 926 NW2d 900 (2018), quoting *Virginia v Black*, 538 US 343, 359; 123 S Ct 1536; 155 L Ed 2d 535 (2003).

We agree with defendant, however, that some of the statements used to convict him were constitutionally protected speech. Most significantly, defendant's unpopular political statements outside of the courtroom expressing his admiration of ISIS and Osama bin Laden constitute protected speech. See *Street v New York*, 394 US 576, 592; 89 S Ct 1354; 22 L Ed 2d 572 (1969) ("It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers."); *Terminiello v Chicago*, 337 US 1, 4; 69 S Ct 894; 93 L Ed 1131 (1949) ("[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger."). Also, there was no evidence that his statements regarding ISIS and bin Laden, if heard by anyone other than the court patron who reported it to security, "[made] or excit[ed] any disturbance." MCL 750.170. Similarly, the prosecutor questioned defendant about his recent protest outside of a courthouse that involved waving the Confederate flag and displaying signs reading "Black Lives Don't Matter" and "Indian Lives Don't Matter." Aside from having no relevance to whether defendant disturbed the peace on April 12, 2017, and being highly prejudicial, this conduct also involved protected speech and cannot serve as the basis of a disturbance under MCL 750.170. See *Snyder v Phelps*, 562 US 443, 458; 131 S Ct 1207; 179 L Ed 2d 172 (2011) (display of signs "at a public place on a matter of public concern" is speech "entitled to 'special protection' under the First Amendment."). And while defendant's threats to police officers inside the police car could be prosecuted under another statute, they do not fall within the scope of MCL 750.170. Those statements were not made in a public place or directed at creating a general disturbance.

Nevertheless, the jury heard testimony about all of these statements. There was no limiting instruction, and the jury was free to convict on the basis of any of defendant's statements it concluded were covered by MCL 750.170. A review of the trial record does not provide us with any basis to determine which of defendant's statements were the basis for his conviction, and so we cannot conclude that defendant was convicted solely on the basis of his constitutionally unprotected threat to shoot members of the public in a public place.

Defendant failed to preserve his constitutional claims at the trial level.[2] Nor did he seek a bill of particulars to require the prosecution to clarify which of his statements constituted a

---

[2] We note, however, that defendant objected on the basis of hearsay to Cozzaglio testifying that an unidentified court patron reported that defendant was outside proclaiming his love of ISIS and Osama bin Laden. The trial court overruled the objection after the prosecutor argued that the statements were being offered solely to explain the course of conduct and not to prove the truth of the matter asserted. However, the prosecutor then repeatedly referenced the statements regarding

violation of the statute. Accordingly, we may not reverse on this basis unless we conclude that admission of the relevant statements was plain error. See *People v Green*, 322 Mich App 676, 681; 913 NW2d 385 (2018) ("Constitutional challenges must be raised in the trial court; otherwise, those challenges are not properly preserved for appellate review."). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Whether the error affected substantial rights "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Even if those elements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

It was plain error to admit statements by defendant that are either protected speech or as a matter of law are not grounds for conviction. Admission of this evidence without a limiting instruction did not merely place defendant in a bad light that may have prejudiced him; it allowed the jury to convict defendant because he made statements that are either constitutionally protected or outside the scope of the statute. And considering the prosecutor's repeated reliance on those statements in closing argument, we conclude that there is a reasonable probability that this error affected the verdict. Thus, defendant meets the third prong of the plain-error test. Lastly, this error both raised questions about defendant's guilt and affected the integrity and fairness of the proceeding. We therefore reverse defendant's conviction and remand for a new trial consistent with this opinion.

Defendant also argues the trial court erred when it instructed the jury that it could convict defendant for exciting a "contention" under MCL 750.170. This too constituted plain error, considering that this part of the statute was found to be constitutionally infirm by this Court in 1971 in *Purifoy*, 34 Mich App 318, a ruling that was reaffirmed in *People v Mash*, 45 Mich App 459; 206 NW2d 767 (1973) and more recently in *Vandenberg*, 307 Mich App at 66 ("In sum, for more than four decades, this Court and federal courts have acknowledged that the reference in MCL 750.170 to 'exciting a contention' unconstitutionally infringes protected speech by criminalizing the peaceable public expression of ideas, merely because those ideas might be offensive to others"). While plaintiff argues that defendant waived this argument by failing to object to the trial court's instructions, defendant also claims ineffective assistance of counsel based on the lack of objection. "To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's

---

ISIS and Osama bin Laden in closing argument. The highly prejudicial nature of these statements is clear. After Williams testified, a juror posed a question asking whether Williams was the one who reported defendant's comments regarding ISIS and bin Laden. The trial court rephrased the question to omit reference to ISIS or bin Laden because "certainly bringing in ISIS would . . . be unduly suggestive and potentially . . . unfairly prejudice[ial] to defendant." Unfortunately, the trial court did not take this into consideration when it allowed the statements in the first place.

error, the result of the proceedings would have been different." *People v Uphaus*, 278 Mich App 174, 185; 748 NW2d 899 (2008). There is no question that trial counsel's failure to object to the trial court's instruction that the jury could convict defendant for exciting a contention fell below an objective standard of reasonableness. By itself, it is questionable whether this error was outcome determinative, i.e., it is unclear whether, more likely than not, the jury found that defendant excited a contention and convicted him on that basis. However, when considered along with the statements that the jury was improperly allowed to considered, the plainly improper instruction supports our decision to reverse as it is a cumulative error. See *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).[3]

Beyond seeking a new trial, defendant also asks that we declare MCL 750.170 facially overbroad.

"A statute is overbroad when it precludes or prohibits constitutionally protected conduct in addition to conduct or behavior that it may legitimately regulate." *People v Gaines*, 306 Mich App 289, 320-321; 856 NW2d 222 (2014). "[T]he overbreadth doctrine is an exception to the general rules of standing that permits a defendant to challenge the constitutionality of a statute on the basis of the hypothetical application of the statute to third parties not before the court." *People v Rogers*, 249 Mich App 77, 96; 641 NW2d 595 (2001). However, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Los Angeles City Council v Taxpayers for Vincent*, 466 US 789, 799; 104 S Ct 2118; 80 L Ed 2d 772 (1984). "The party challenging the constitutionality of a statute bears the burden of proving its invalidity." *People v Boomer*, 250 Mich App 534, 538; 655 NW2d 255 (2002).

Our Court has repeatedly declined to hold MCL 750.170 unconstitutional despite numerous opportunities to do so. See *People v Weinberg*, 6 Mich App 345; 149 NW2d 248 (1967); *Purifoy*, 34 Mich App 318; *Mash*, 45 Mich App 459; *Vandenberg*, 307 Mich App 57. We see no basis to reach a different result here. The reasoning of those cases is sound and defendant does not present any compelling new arguments other than his reliance on the Michigan Supreme Court's decision in *People v Rapp*, 492 Mich 67, 75; 821 NW2d 452 (2012), which struck down a Michigan State University ordinance making it a crime to "disrupt the normal activity or molest the property of any person, firm, or agency, while that person, firm or agency is carrying out service, activity or agreement for or with the University."

Defendant's reliance on *Rapp* is misplaced. First, *Rapp* did not overrule or criticize this Court's decisions in *Weinberg*, *Purifoy*, *Mash*, and *Vandenberg* finding that the statute was neither overbroad or vague. Second, the ordinance in *Rapp* was far more obtuse than MCL 750.170. As observed by the Supreme Court, it allowed for "enforce[ment] against *anyone* who disrupts in *any* way *anyone* carrying out *any* activity for or with MSU." *Id*. at 76. The Court went on to note that "there are seemingly infinite ways in which someone might 'disrupt' another who is engaged in an 'activity' for or with MSU." *Id*. at 76-77. The ordinance largely rendered criminal normal activities that might have the effect of even slightly interfering with any employee, student or contractor of the university engaged in any activity at any location. By contrast, MCL 750.170,

---

[3] To be clear, however, defendant's successful as-applied challenge, by itself, warrants reversal.

as we observed in *Weinberg*, falls within the state's authority to adopt "properly drawn statutes and ordinances designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect the administration of justice and other essential governmental functions." *Weinberg*, 6 Mich App at 362, quoting *Cox v Louisiana*, 379 US 559, 574; 85 S Ct 476; 13 L Ed 2d 487 (1965) (quotation marks omitted). Further, MCL 750.170 does not rely on a subjective interpretation of the "normal activities" of individuals that are disrupted. Instead, MCL 750.170 objectively prohibits disturbances in public places.[4] Moreover, we have already limited the scope of MCL 750.170 to remove any violation on the basis of exciting a contention, which the ordinance in *Rapp* arguably contained.

Further, if we can interpret the statute in a manner that meets First Amendment requirements we are required to do so. See *People v Patton*, 325 Mich App 425, 432; 925 NW2d 901 (2018) ("When reviewing a constitutional challenge to a statute, this Court must construe it to be constitutional unless its unconstitutionality is clearly apparent."). And by remanding for a new trial where substantial evidence was admitted regarding activities that are constitutionally protected without a limiting instruction, we hold that protected speech, in and of itself, may not serve as a basis for a conviction under MCL 750.170. Beyond the circumstances of this case, which can be addressed without striking the statute, defendant has not established a real danger that MCL 750.170 is preventing the exercise of free speech.[5] See *Village of Hoffman Estates v Flipside, Hoffman Estates, Inc*, 455 US 489, 503; 102 S Ct 1186; 71 L Ed 2d 362 (1982) ("We do not suggest that the risk of discriminatory enforcement is insignificant . . . . At this stage, however, we are not prepared to hold that his risk jeopardizes the entire ordinance.").

By addressing the specific issues involving defendant's conviction while not striking down the statute, we preserve the ability of law enforcement to prohibit truly disruptive activities, while also preserving the First Amendment rights of citizens. Because we read the statute to exclude prosecution for constitutionally protected speech, we reject defendant's claim that MCL 750.170 is facially unconstitutional.

---

[4] As for defendant's vagueness challenge, we see no basis to conclude that a person of ordinary intelligence would not understand that standing outside a public building and threatening to shoot it up was prohibited under the law. See *People v Assy*, 316 Mich App 302, 308; 891 NW2d 280 (2016). MCL 750.170, which prohibits "mak[ing] or excit[ing] any disturbance," provides fair notice to individuals that threatening to "shoot up" the court building would cause a disturbance and is, therefore, illegal. See *TM*, 326 Mich App at 239 (observing that, consistent with the First Amendment, states may prohibit "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.") (quotation marks and citation omitted).

[5] Defendant argues that MCL 750.170 could be used to quell protests and counter-protests. However, the seeming prevalence of protests and counter-protests in recent years suggests that the statute is not having a chilling effect on protected speech.

Reversed and remanded for a new trial consistent with this opinion.  We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan