*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

MATTHEW SCOTT DUFF,

        Defendant-Appellee.

UNPUBLISHED
December 17, 2024
2:13 PM

No. 354406
Oakland Circuit Court
LC No. 2018-267140-FH

## ON REMAND

Before: BORRELLO, P.J., and RIORDAN and O'BRIEN, JJ.

PER CURIAM.

This case returns to this Court on remand from our Supreme Court. See *People v Duff*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 163961); slip op at 15 (*Duff II*). Defendant is charged with operating a motor vehicle while intoxicated, third offense, MCL 257.625. The trial court dismissed this charge after granting defendant's motion to suppress evidence of defendant's intoxication, concluding that a sheriff deputy seized defendant by parking his patrol car behind defendant's car. *People v Duff*, unpublished per curiam opinion of the Court of Appeals, issued November 23, 2021 (Docket No. 354406), p 1 (*Duff I*), rev'd by *Duff II*, ___ Mich ___ (2024). The prosecution appealed, and in an unpublished opinion, a panel of this Court[1] reversed, holding that the trial court erred by concluding that, under the circumstances, defendant had been seized for purposes of the Fourth Amendment when the deputy parked his car 10 feet away from defendant's car at a 45-degree angle. *Id*. at 4. The panel further concluded that the deputy had reasonable suspicion to detain defendant after the deputy walked up to defendant's car and saw signs that defendant was intoxicated. *Id*. at 4-5. On appeal to our Supreme Court, that Court reversed, holding that defendant was seized before the deputy observed signs of intoxication. *Duff*

---

[1] Judge RIORDAN was not on the original panel and has been assigned in place of the previous panel member.

*II*, ___ Mich at ___; slip op at 15.[2] Our Supreme Court remanded this case back to this Court for consideration of whether there existed "reasonable suspicion of criminal conduct when defendant was initially seized." *Id*. We conclude that the deputy had reasonable suspicion of criminal conduct when defendant was initially seized, and accordingly remand this case to the trial court for further proceedings.

"Questions of constitutional law are reviewed de novo." *Id*. at ___; slip op at 5. A trial court's factual findings regarding a motion to suppress are reviewed for clear error. *Id*. "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, [this Court's] review is de novo." *Id*. (quotation marks and citations omitted).

"The Fourth Amendment of the United States Constitution protects the people from unreasonable searches and seizures." *Id*., citing US Const, Am IV. "The Michigan Constitution contains a similar provision." *Duff II*, ___ Mich at ___; slip op at 5-6, citing Const 1963, art 1, § 11. The same level of protection is generally afforded under these state and federal constitutional provisions. *Duff II*, ___ Mich at ___ n 2; slip op at 6 n 2.

---

[2] The trial court reasoned that defendant was seized when the deputy parked his patrol car behind defendant's car because, at that point, defendant's "only means to exit [was] driving over the grass in front of him." *Duff I*, unpub op at 2. This Court held that the trial court clearly erred by finding that defendant could only exit by driving over the grass because the evidence established that the deputy's vehicle only partially blocked defendant's exit. *Id*. at 3. This Court recognized, however, that this did not resolve whether defendant was seized, and that the Court needed to address whether the deputy engaged in "other coercive behavior . . . that turned the encounter into a seizure for Fourth Amendment purposes." *Id*. at 3-4 (quotation marks and citation omitted). This Court concluded that "there was no such coercive behavior," so there was no seizure. *Id*. at 4. Our Supreme Court affirmed that the trial court clearly erred by finding that defendant's vehicle was completely blocked in, *Duff II*, ___ Mich at ___; slip op at 8-9, but concluded that the deputy engaged in coercive conduct sufficient to turn the encounter into a seizure before the deputy saw signs of intoxication. The Court explained that defendant was seized before the deputy reached defendant's vehicle

> because [defendant] would not have felt free to leave or otherwise terminate the police encounter under the totality of the circumstances when [the deputy] pulled behind defendant's vehicle [10 feet away and] at a 45-degree angle, obstructing defendant's egress, while also shining a spotlight and headlight at defendant's vehicle, and when he and another police officer immediately approached defendant's car from both sides while at least one of the officers was shining his flashlight into the vehicle. [*Id*. at ___; slip op at 14.]

In other words, the Court held that the deputy engaged in coercive behavior sufficient to turn the encounter into a seizure when the deputy approached defendant's vehicle at night with a flashlight after parking a patrol car 10 feet behind the occupied vehicle and shining lights on it.

"A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions." *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022). One such established exception is the investigative *Terry*[3] stop. *Id.* "A brief seizure for investigative purposes does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot." *Id.*, citing *Terry v Ohio*, 392 US 1, 22, 30-31; 88 S Ct 1868; 20 L Ed 2d 889 (1968), and *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001).

"Whether an officer has a reasonable suspicion to make such an investigatory stop is determined case by case, on the basis of an analysis of the totality of the facts and circumstances." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). Individual facts that appear innocent when viewed in isolation may amount to reasonable suspicion when considered collectively. *Oliver*, 464 Mich at 193. See also *United States v Sokolow*, 490 US 1, 9-10; 109 S Ct 1581; 104 L Ed 1 (1989).

When determining whether the totality of the circumstances provide reasonable suspicion to support an investigatory stop, the circumstances must be viewed as understood and interpreted by law enforcement officers, not legal scholars. *Oliver*, 464 Mich at 192. Law enforcement officers may "consider 'the modes or patterns of operation of certain kinds of lawbreakers. From this data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.' " *People v Nelson*, 443 Mich 626, 636; 505 NW2d 266 (1993) (brackets omitted), quoting *United States v Cortez*, 449 US 411, 418; 101 S Ct 690; 66 L Ed 621 (1981). "Also, common sense and everyday life experiences predominate over uncompromising standards." *Oliver*, 464 Mich at 192 (quotation marks, brackets, and citation omitted).

"[O]bjective facts known to the police officers who effected the traffic stop should be considered in determining whether the stop was justified by reasonable suspicion regardless of whether the officers subjectively relied on those facts." *Id.* at 200. "The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quotation marks, brackets, and citations omitted).

At the evidentiary hearing held on defendant's motion to suppress, Oakland County Sheriff's Deputy Jason Pence was the only witness to testify. Deputy Pence, who had 23 years' experience as a police officer, testified that on Sunday, March 4, 2018, at approximately 10:09 p.m., he was driving a patrol vehicle in Pontiac with another deputy as a passenger. While driving, Deputy Pence noticed a lone vehicle parked in the parking lot of Whitman Elementary School. The elementary school was, unsurprisingly, closed when the deputy saw the vehicle in the school's parking lot at approximately 10 p.m. on a Sunday. Deputy Pence saw that the vehicle was parked two or three parking spots in from the lot's entrance, facing forward toward a grassy area. The deputy noticed the vehicle running, and saw that it was occupied, with the interior lights on. The

---

[3] *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

presence of the vehicle in the parking lot seemed suspicious to Deputy Pence "due to the time [of] day and being that the area is a high drug crime area."

Upon seeing the vehicle, Deputy Pence drove into the parking lot and parked 10 feet behind the vehicle at a 45-degree angle, with the front of the patrol vehicle facing the suspect vehicle's driver's side rear bumper. Deputy Pence did not activate the patrol vehicle's emergency overhead lights or siren, but the patrol vehicle's headlights were on, and a spotlight was activated and pointed toward the driver of the other vehicle.

When asked why he entered the parking lot, Deputy Pence testified:

Being that it was a lone vehicle in a parking lot and that I know there was no activity going on at the school, I see [the vehicle] was occupied, the school was closed, it was—it was late. We didn't—I didn't know if he was having some sort of medical emergency or possibly, since it is a high crime area where—where that school is located or that the person was possibly having any sort of criminal activity going on at that time.

When asked what kind of criminal activity he thought might be afoot, Deputy Pence referred to possible drug use and alluded to possible alcohol-related activity.

After positioning his patrol vehicle behind the suspect vehicle, Deputy Pence got out of the patrol car and walked to the driver's side window of the suspect vehicle. Deputy Pence identified defendant in the courtroom as the person who was in the driver's seat of the vehicle. Deputy Pence testified that defendant had his window down when the deputy approached. Deputy Pence observed that defendant's eyes were bloodshot and glossy, his speech was slurred, and the deputy smelled alcohol emanating from defendant and the vehicle. Later in the investigation, defendant stated that he had been drinking.

Our Supreme Court held that defendant was seized before Deputy Pence perceived signs of intoxication. *Duff II*, ___ Mich at ___; slip op at 14-15. This Court's task on remand is to determine whether "Deputy Pence had reasonable suspicion of criminal conduct when defendant was initially seized." *Id*. at 15. We conclude that the undisputed facts,[4] when considered together, were enough to establish reasonable suspicion at the time of the initial seizure. Deputy Pence, who had 23 years' experience as a police officer, saw a lone vehicle parked in the parking lot of an elementary school late on a Sunday night. The vehicle was running and occupied, and the interior lights were on. The school was closed, and there were no activities going on at the school. The presence of a car in the parking lot of a closed establishment at a late hour is among the considerations that may support the existence of reasonable suspicion. See *People v Peebles*, 216 Mich App 661, 665; 550 NW2d 589 (1996) (holding that reasonable suspicion existed when the defendant was driving away from closed stores in a parking lot without the use of headlights at 3:30 a.m.); *United States v Edmonds*, 345 US App DC 131, 136-137; 240 F3d 55 (2001) (noting that "courts recognize that a car parked in the lot of a closed establishment can contribute to an

---

[4] As our Supreme Court noted, "[t]he underlying facts are largely undisputed." *Id*. at 2.

-4-

officer's reasonable suspicions").[5]  And an unknown individual's suspicious activity or presence on school grounds has been recognized to heighten a reasonable officer's concerns.  *United States v Coleman*, 18 F4th 131, 136-137 (CA 4, 2021).  Also, the school was located in an area known to Deputy Pence as having a high incidence of drug-crime activity.  Defendant's presence in a high-crime area would not by itself create reasonable suspicion, but Deputy Pence's knowledge of the characteristics of the location, when combined with the other relevant facts, including defendant being in a parking lot of a closed school late on a Sunday night, justified a brief investigative stop.[6]  See *Illinois v Wardlow*, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000) (noting that an individual's presence in a high-crime area is not enough by itself to establish reasonable suspicion but that "officers are not required to ignore the relevant characteristics of a location" and "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis").

This Court granted the prosecution's motion to file a supplemental brief on remand,[7] and in that brief, the prosecution argues that the facts known to Deputy Pence established not only reasonable suspicion but also probable cause to arrest defendant for a violation of the Pontiac Municipal Code.  This Court could address this argument because we view it as part of addressing whether defendant's motion to suppress should have been granted.  See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020) ("[S]o long as the issue itself is not

---

[5] "Opinions of the lower federal courts . . . are not binding but may be considered persuasive." *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018).

[6] This case is easily distinguishable from our Supreme Court's recent decision in *People v Prude*, ___ Mich ___; ___ NW3d ___ (2024).  In that case, our Supreme Court explained that, before the officers engaged in a consensual encounter with the defendant, the officers only saw that the "defendant was alone and parked legally with the engine off during daylight hours in an area of the parking lot where nonresidents frequently committed crimes[.]" *Id*. at ___; slip op at 8.  The Court emphasized that it "was still daylight" when the officers approached the defendant, and it explained that "there is nothing suspicious about being parked in an apartment-complex parking lot in the early evening." *Id*. at ___; slip op at 9.  Unlike the defendant in *Prude* who was parked in an apartment complex's parking lot during the day, defendant here was parked in a closed school's parking lot at night.  We further note that this case is unlike *People v Freeman*, 413 Mich 492, 496; 320 NW2d 878 (1982), where our Supreme Court explained, "A lone automobile idling in a darkened parking lot late at night does not, without more, support a reasonable suspicion of criminal activity."  The defendant in *Freeman* was parked "near a darkened house in a private parking lot," *id*. at 493, whereas defendant here was parked in a closed school's parking lot. Additionally, reasonable suspicion in this case was not based solely on the fact that defendant was idling in a closed school's parking lot at night, but also on Deputy Pence's knowledge of the characteristics of the location.  All of the relevant facts, taken together, justified a brief investigative stop.  See *Oliver*, 464 Mich at 193 (explaining that individual facts that appear innocent when viewed in isolation may, when taken together, amount to reasonable suspicion).

[7] *People v Duff*, unpublished order of the Court of Appeals, entered October 1, 2024 (Docket No. 354406).

novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court."). We decline to do so, however, given our conclusion that the facts known to Deputy Pence justified an investigative stop on the basis of reasonable suspicion.[8]

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Riordan
/s/ Colleen A. O'Brien

---

[8] Because the stop was justified by reasonable suspicion, we need not consider whether the exclusionary rule applies, as our Supreme Court directed this Court to address the exclusionary rule only if this Court determines that there was no reasonable suspicion. *Duff II*, ___ Mich at ___; slip op at 15.