*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOHN CORYELL KELSEY II,

      Defendant-Appellant.

UNPUBLISHED
July 8, 2021

Nos. 351719; 354239
Ingham Circuit Court
LC No. 14-001380-FH

Before: MURRAY, C.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

In Docket No. 351719, defendant, John Coryell Kelsey II, appeals by right the trial court's order denying his motion for resentencing following a *Crosby*[1] remand. In Docket No. 354239, defendant appeals by delayed leave granted the trial court's order requiring him to pay restitution to the Ingham County Sheriff's Department and the family of his victim, Ingham County Sheriff's Deputy Grant Whitaker. In Docket No. 351719, we affirm. In Docket No. 354239, we remand for the trial court to amend its restitution award to reduce the awards for replacing a prisoner screen and siren, but affirm in all other respects.

## I. FACTUAL BACKGROUND

This Court has previously discussed the facts of defendant's offense. Defendant fled in a sports utility vehicle from Deputy Whitaker, whose vehicle left the road and struck a tree, killing him. *People v Kelsey*, unpublished per curiam opinion of the Court of Appeals, issued April 17, 2018 (Docket No. 329229), rev'd in part 503 Mich 982 (2019), p 1. Defendant was convicted of first-degree fleeing or eluding a police officer causing death and driving while license suspended, but he was acquitted of driving while license suspended causing death. During his prior appeal, defendant challenged his sentence. *Id*. at 14. This Court determined that the trial court properly scored defendant's offense variables (OVs). *Id*. at 14-16. However, this Court remanded for the trial court to determine whether it would have imposed a materially different sentence under

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-1-

advisory sentencing guidelines, consistent with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and *United States v Crosby*, 397 F3d 103 (CA 2, 2005). *Id.* The Michigan Supreme Court later reversed this Court's decision that defendant had not timely objected to the amount of restitution and remanded for the trial court to conduct a restitution hearing. *People v Kelsey*, 503 Mich 982, 982; 923 NW2d 883 (2019).

Following remand, defendant moved for resentencing through counsel. The trial court addressed defendant's desire for replacement counsel at a restitution hearing, substituted defendant's counsel, and rescheduled the restitution hearing. The court ultimately found that it would have imposed the same sentence on defendant absent mandatory sentencing guidelines, and it declined to resentence defendant.

Before the restitution hearing, the Ingham County Sheriff's Department provided the trial court with itemized statements of the costs incurred by Deputy Whitaker's family related to his death and the costs of replacing the destroyed police vehicle. At the restitution hearing, the sheriff's department fleet manager testified that he did not have documents related to Deputy Whitaker's vehicle. However, he testified about purchasing and equipping police vehicles and used invoices from other purchases to "roll back" values to replace the equipment that was in the vehicle. He also described personally observing the destroyed vehicle and its damaged or destroyed equipment.

The trial court found that it could not determine a fair market value for the destroyed police vehicle "given the complexities of purchasing and outfitting police vehicles," and that it could not determine a fair market value for the destroyed equipment because there was no market for used police equipment. It held that the proper measure of restitution was the replacement value. It ordered defendant to pay $37,388.10 to the sheriff's department for costs incurred from the loss of the vehicle and equipment and $11,847.45 to Deputy Whitaker's parents for costs incurred as the result of his death.

## II. PROPORTIONALITY

First, defendant argues in both his brief filed by counsel and his Standard 4 brief that the trial court used an incorrect sentencing guidelines range because his OVs were incorrectly scored. We reject this argument. The scoring of defendant's OVs and the circumstances of his offense are the law of the case.

The law-of-the-case doctrine "provides that an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *People v Herrera*, 204 Mich App 333, 340; 514 NW2d 543 (1994). In defendant's prior appeal, this Court ruled that the trial court correctly scored OVs 3, 5, 9, 17, 18, and 19. *Kelsey*, unpub op at 14-16. This Court also ruled that "[e]xtensive circumstantial evidence support[ed] defendant's identity as the driver of the vehicle that was fleeing from police." *Id*. at 5. Our previous decisions are the law of the case. Therefore, we decline to revisit them.

Second, defendant argues that his sentence was unreasonable and disproportionate. We disagree. Defendant's sentence is proportionate because it fell within his guidelines range.

Our Legislature fashioned the sentencing guidelines in light of the principle of proportionality as enshrined in the Michigan and United States Constitutions. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). This Court presumes that sentences within the guidelines range are proportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). When the trial court does not depart from the sentencing guidelines and there are no factual or scoring errors, this Court must affirm the defendant's sentence. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).

In this case, defendant's recommended minimum sentence was 84 to 280 months. The trial court sentenced defendant to serve a minimum of 240 months in prison. Because defendant was sentenced within his guidelines range and there were no factual or scoring errors, his sentence is presumptively proportionate.

Third, defendant argues through counsel that his sentence constitutes cruel or unusual punishment because it is effectively a life sentence given his age. Defendant has not overcome the presumption that his sentence is not cruel or unusual.

The Michigan Constitution prohibits cruel or unusual punishment, 1963 Const, art 1, § 16, and the United States Constitution prohibits cruel and unusual punishment, US Const, Am VIII. A sentence that is constitutional under the Michigan Constitution is necessarily constitutional under the United States Constitution. *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582 (2015). "A sentence within the guidelines range is presumptively proportionate, and a proportionate sentence is not cruel or unusual." *Bowling*, 299 Mich App at 558. A sentence is not cruel or unusual solely because the defendant's age will effectively result in the defendant spending the remainder of his or her life in jail. See *id*. This is especially true when the defendant has a lengthy criminal record and has committed a grave offense. *Id*. at 558-559, 560.

As previously discussed, defendant's sentence is within the guidelines range. Therefore it is presumptively not cruel or unusual. Defendant's age alone is not a basis to overcome that presumption, particularly when defendant has a lengthy criminal record and his crime caused the death of another person. Defendant has not demonstrated that his sentence is cruel or unusual.

Fourth, defendant argues that his sentence is not proportionate because other offenders have received lesser sentences for the same offense. The purpose of sentencing guidelines is to "promote uniformity in criminal sentencing by ensuring that offenders with similar offense and offender characteristics receive substantially similar sentences." *People v Smith*, 482 Mich 292, 302; 754 NW2d 284 (2008) (cleaned up). The guidelines facilitate proportionate sentences by using OVs to consider the severity of the offense and prior record variables (PRVs) to consider the characteristics of the offender's criminal history. *Babcock*, 469 Mich at 263-264. Defendant has presented three cases on appeal, but none of these cases provide OVs or PRVs to which we could compare the seriousness of the offenses with the seriousness of defendant's offense. Again, defendant has not overcome the presumption that his sentence is proportionate.

Fifth, defendant argues that he is entitled to resentencing because the prosecution did not lawfully provide him with a notice of his habitual-offender sentencing enhancement. Defendant has provided no authority for his assertion that a *Crosby* remand requires the trial court to examine

the basis of his original sentence, which included a habitual-offender sentencing enhancement.  In *Lockridge*, 498 Mich at 398, the Supreme Court provided the procedure for a *Crosby* remand:

> [O]n a *Crosby* remand, a trial court should first allow a defendant an opportunity to inform the court that he or she will not seek resentencing. If notification is not received in a timely manner, the court (1) should obtain the views of counsel in some form, (2) may but is not required to hold a hearing on the matter, and (3) need not have the defendant present when it decides whether to resentence the defendant, but (4) must have the defendant present, as required by law, if it decides to resentence the defendant.  [Cleaned up.]

In this case, the trial court accurately followed the procedure provided in *Lockridge*, which does not require the trial court to examine the basis of the defendant's original sentence.

Sixth, defendant argues that his minimum sentence was unconstitutionally supported by judge-found facts.  We reject this argument because his sentence after the *Crosby* remand was based on now-advisory sentencing guidelines.

The Supremacy Clause provides that the laws of the United States are supreme and judges in every state are bound by the United States Constitution and the laws of the United States.  US Const, art VI, cl 2.  State courts are bound by decisions of the United States Supreme Court that interpret federal law.  *People v Patton*, 325 Mich App 425, 444 n 3; 925 NW2d 901 (2018).  In *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000), the United States Supreme Court held that facts used to increase a statutory maximum penalty must be submitted to a jury and proved beyond a reasonable doubt.  In *Alleyne v United States*, 570 US 99, 112; 133 S Ct 2151; 186 L Ed 2d 314 (2013), the United States Supreme Court extended this rule to mandatory minimum sentences.  However, while facts that increase a mandatory minimum sentence must be found by a jury, facts that influence judicial discretion need not be found by a jury.  *Id*. at 116.

In *Lockridge*, 498 Mich at 374, the Michigan Supreme Court held that "a straightforward application of the language and holding in *Alleyne* leads to the conclusion that Michigan's sentencing guidelines scheme violates the Sixth Amendment."  *Lockridge*, 498 Mich at  379.  It required that a defendant who demonstrated that his or her OV level was calculated using judge-found facts was entitled to a remand for the trial court to "determine whether plain error occurred, i.e., whether the court would have imposed the same sentence absent the unconstitutional constraint on its discretion."  *Id*. at 399.  The trial court was required to resentence the defendant if it would not have imposed the same sentence under advisory sentencing guidelines.  *Id*.

Following remand, the trial court indicated that it had considered the sentencing guidelines as advisory and ruled that it would have imposed the same sentence on defendant absent the mandatory sentencing guidelines.  It therefore declined to resentence defendant.  Defendant received the procedure to which he was entitled under *Lockridge*, and this procedure was consistent with *Alleyne* and *Apprendi*.  The trial court did not fail to follow binding United States Supreme Court precedent.

Seventh, defendant argues that the Michigan Supreme Court violated separation-of-powers principles when it rewrote the Michigan sentencing guidelines. This issue is not preserved. To preserve an issue, a party must raise it before the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). Defendant did not raise this issue before the trial court. We conclude that the trial court did not plainly err by following the Michigan Supreme Court's *Lockridge* decision, which modified the sentencing guidelines under MCL 8.5.

Michigan's Constitution provides: "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. The power to make laws cannot be delegated to any other body. *In re Certified Questions*, 506 Mich 332, 358; 958 NW2d 1 (2020). However, the Legislature may confer authority or discretion "to be exercised under and in pursuance of the law." *Id*. (cleaned up). MCL 8.5 provides that, when any portion of an act is found to be invalid by a court, "such invalidity shall not affect the remaining portions or applications of the act which can be given effect without the invalid portion or application, provided such remaining portions are not determined by the court to be inoperable, and to this end acts are declared to be severable." The *Lockridge* Court decided that rendering the sentencing guidelines advisory "require[d] the least judicial rewriting of the statute[.]" *Lockridge*, 498 Mich at 391. Defendant has not demonstrated that the trial court plainly erred by following the Michigan Supreme Court's *Lockridge* decision.

Eighth, defendant argues that his sentence unconstitutionally violates the Ex Post Facto Clauses of the Michigan and United States Constitutions. We disagree.

The United States Constitution and Michigan Constitution prohibit ex post facto laws. US Const, art I, § 10; Const 1963, art 1, § 10. The Ex Post Facto Clause applies indirectly to the judiciary through the Due Process Clause. *People v Stevenson*, 416 Mich 383, 395; 331 NW2d 143 (1982). However, this Court has held that "retroactive application of *Lockridge* does not offend the prohibition of ex post facto laws—even when its application results in a lengthier sentence than the one previously imposed." *People v Odom*, 327 Mich App 297, 310; 933 NW2d 719 (2019). If an increased sentence following *Lockridge* does not violate the Ex Post Facto Clause, then certainly the Ex Post Facto Clause is not violated when a defendant's punishment has not been increased.

## III. RESTITUTION

Defendant next raises issues regarding the propriety of his restitution. We conclude that the trial court did not err by ordering defendant to pay restitution to Deputy Whitaker's family and the replacement value of the police vehicle. The prosecution concedes that the trial court erred when it found values for replacing the police siren and prisoner screen that the testimony did not support.

This Court reviews a restitution calculation for an abuse of discretion. *People v Wahmhoff*, 319 Mich App 264, 269; 900 NW2d 364 (2017). The trial court's factual findings are reviewed for clear error. *Id*. The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or when it makes an error of law. *People v Duncan*, 494

Mich 713, 722-723; 835 NW2d 399 (2013). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

Crime victims have the right to restitution. Const 1963, art 1, § 24. The Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*., requires defendants to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate." MCL 780.766(2). When the crime results in the damage, loss, or destruction of property, the CVRA requires a defendant to

> (a) Return the property to the owner of the property or to a person designated by the owner.

> (b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:

> (*i*) The fair market value of the property on the date of the damage, loss, or destruction. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

> (*ii*) The fair market value of the property on the date of sentencing. However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.

> (c) Pay the costs of the seizure or impoundment, or both. [MCL 780.766(3).]

First, defendant argues that the trial court erred by ordering him to pay restitution when he did not proximately cause Deputy Whitaker's death and the destruction of his police vehicle. We disagree. The jury necessarily found that defendant's conduct was both the factual and proximate cause of Deputy Whitaker's death when it found him guilty of fleeing and eluding causing death.

"The CVRA . . . permits an award only for losses factually and proximately caused by the defendant's offense[.]" *People v Corbin*, 312 Mich App 352, 369; 880 NW2d 2 (2015). MCL 750.479a(1) provides that a person who fails to follow a signal given by a police officer to stop shall not willfully fail to obey that signal. "If the violation results in the death of another individual, an individual who violates [MCL 750.479a(1)] is guilty of first-degree fleeing and eluding . . . ." MCL 750.479a(5). The phrase "results in the death of another" has been defined to mean that the defendant's conduct was both the factual and proximate cause of the victim's death. *People v Feezel*, 486 Mich 184, 194-195; 783 NW2d 67 (2010) (concerning failing to stop after an accident causing death). By finding defendant guilty of first-degree fleeing and eluding, the jury necessarily found that defendant's conduct both factually and proximately caused the death of Deputy Whitaker.

Second, defendant argues that the jury's acquittal on the charge of driving while license suspended causing death means that the jury found that defendant did not cause Deputy Whitaker's death. A verdict of acquittal does not demonstrate that a defendant did not engage in criminal conduct. Rather, it only demonstrates that the prosecution did not prove the elements of a charge beyond a reasonable doubt. See *People v Ewing (After Remand)*, 435 Mich 443, 452; 458 NW2d 880 (1990) (opinion by BRICKLEY, J.) (stating that an acquittal may result for any number of reasons); *id*. at 477 (opinion by BOYLE, J.) (stating that an ultimate acquittal did not bar a preponderance finding during sentencing). Because the jury necessarily found that defendant caused Deputy Whitaker's death when it found him guilty of first-degree fleeing and eluding, the trial court did not err when it determined that defendant's acquittal of driving while license suspended causing death did not bar restitution.

Third, defendant argues that the trial court improperly ordered restitution when it used values from 2016 and 2019 to determine the amount of restitution, the prosecution did not provide evidence of the fair market value of a 2009 Impala, and the trial court adopted the overpriced and speculative amounts from the sheriff's department memorandum. The prosecution concedes that the values of the siren and prisoner screen exceeded the amounts that were supported by testimony, and to that extent, restitution should be reduced. Except regarding those values, we conclude the trial court did not clearly err when it found the values of other police equipment.

When the fair market value of property subject to restitution "cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value." MCL 780.766(3)(b)(*i*) and (*ii*). The CVRA requires sentencing courts to apply a reasonableness standard when calculating restitution. *Corbin*, 312 Mich App at 365. The statutory language "does not suggest the need for absolute precision, mathematical certainty, or a crystal ball." *Id*. It allows losses with a reasonably certain factual foundation but excludes speculative or conjunctural losses. *Id*.

In this case, the fleet manager provided detailed testimony about how he arrived at the values he assigned to various pieces of equipment. He testified that, while he used invoices from 2010, 2014, or 2018, he reduced the amounts back to the values the items would have had in 2009.[2] The fleet manager provided calculations for the computer system, radar unit, light bar, siren, speaker, and gun lock. We are not definitely and firmly convinced that the trial court made a mistake regarding the value, except for the values of the siren and prisoner screen. The prosecution concedes that the trial court should have found replacement costs of $1,871.20 for the prisoner screen and $1,257 for the siren, but the trial court instead found the cost to replace the prisoner screen was $2,532.60 and the cost to replace the siren was $2,212.50. We agree that restitution should be reduced to this extent.

---

[2] We note that, if anything, the fleet manager reduced these values too much. Replacement value should be the greater of the value at the date of loss or the date of sentencing. MCL 780.766(3)(b). The vehicle was destroyed in 2014 and defendant was sentenced in 2015, but the fleet manager approximated 2009 values.

Fourth, defendant argues that the trial court erred by ordering him to pay restitution to Deputy Whitaker's family because his family had been compensated by other benefit programs. We find no error here as the restitution values were properly determined, and the defendant has a remedy available to seek an amended order of restitution under the CVRA if he has evidence that justifies the entry of an amended order of restitution.

The CVRA provides that the term "victim" means an "individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1). The Act specifies that "[i]f the victim is deceased or dies, the court shall order that the restitution or remaining restitution be made to those entitled to inherit from the victim's estate." MCL 780.766(7). While "[t]he court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss" the CVRA also expressly directs the court to order restitution "to the crime victims services commission or to any individuals, partnerships, corporations, associations, governmental entities, or other legal entities that compensated the victim or the victim's estate for a loss incurred by the victim to the extent of the compensation paid for that loss." MCL 780.766(8). The Act contains a built-in provision that could be used to address accounting or apportionment issues. Upon motion of any party, the court may enter an amended order of restitution to consider new information related to the restitution previously ordered. MCL 780.766(22).

The party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). While defendant has argued that the Whitakers *may* have received benefits from officers' compensation funds or life insurance, defendant never provided proof of these amounts. Defendant stated that he would support these amounts with an attachment to his brief following the restitution hearing, but that brief has no such attachment. Therefore, defendant has abandoned this issue. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.").

Regardless of his failure to establish any error here, we note that defendant has a recourse to ensure an appropriate accounting of the entire restitution order. His remedy is contained in MCL 780.766(22). If he (or any party) has new evidence that justifies an amendment to the restitution order, the restitution order can be amended. Under the CVRA, the trial court retains authority to enter an amended restitution order that would apportion the amounts that defendant owes to each victim for the direct or threatened physical, financial, or emotion harm as the result of the tragic crimes he committed. See MCL 780.766(8) and (22). The amended restitution order could clarify amounts that are or were reimbursed to the victims by third parties, thereby requiring defendant to satisfy those entities as well, as the CVRA expressly permits.

In sum, we affirm the trial court's determination of the entire restitution obligation. We simply acknowledge that upon filing a properly documented motion in the trial court that contains new information, the defendant has a remedy. He may request an amended order of restitution that would apportion the previously determined restitution among victims including any entity that may have compensated the Whitaker estate for a loss compensable under the CVRA. MCL 780.766(8) and (22).

Fifth, defendant argues that the trial court erred by failing to resolve his discovery motion. This argument also lacks record support. We review a trial court's decision regarding a motion for discovery for an abuse of discretion. *People v Phillips*, 468 Mich 583, 587; 663 NW2d 463 (2003).

At the restitution hearing, the trial court indicated that it would not entertain motions filed by defendant *in propria persona* while he was represented by an appointed attorney, with the exception of a discovery motion that defendant filed before he was appointed counsel. The trial court in fact considered defendant's discovery motion and ordered that appointed counsel "review the discovery motion and if counsel wishes to proceed with the motion, to seek a stipulation with the Prosecutor for entry of an Order granting the requested relief, or alternatively set the motion for hearing." At the time of the motion hearing, appointed counsel stated that he had received the necessary discovery from the prosecutor's office. However, counsel also indicated that, in his view, some of the discovery requests filed by defendant were not appropriate and therefore did not pursue them. Additionally, as it relates to the expenses incurred by Whitaker's estate, defendant requested "[c]opies of any and all dated receipts with respects to any amount of restitution that may be ordered to [Whitaker's estate]." However, defendant expressly stipulated to the expenses incurred by Whitaker's estate during the hearing. Because the court considered defendant's motion and the prosecution provided discovery, in addition to defendant stipulating to the costs incurred by Whitaker's estate, defendant has not established the factual basis of his argument that the trial court erred by refusing to address his discovery motion.

Sixth, defendant argues that the CVRA is unconstitutional because it allows a court to impose arbitrary and excessive restitution costs. We note that this issue is unpreserved because defendant did not raise a challenge to the constitutionality of the CVRA before the trial court. See *Grant*, 445 Mich at 546. We conclude that the CVRA is not vague as applied to defendant because it does not provide unfettered discretion.

"The 'void for vagueness' doctrine is derived from the constitutional guarantee that the state may not deprive a person of life, liberty, or property, without due process of law." *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011) (cleaned up). A statute is void when it provides unstructured, unlimited discretion when applying a law. *People v Douglas*, 295 Mich App 129, 138; 813 NW2d 337 (2011). When deciding whether a statute is vague, this Court considers judicial constructions of the statute, judicial determinations, the common law, dictionaries, treatises, or the generally accepted meanings of words. *People v Vronko*, 228 Mich App 649, 652-654; 579 NW2d 138 (1998). This Court considers only the facts of the defendant's case unless the defendant has asserted a First Amendment violation. *Id*. at 652.

When it is impossible to return property to a victim, the CVRA requires the defendant to pay "[t]he fair market value of the property," but "if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value." MCL 780.766(3)(b)(*i*) and (*ii*). "Cannot" means "to be unable to do otherwise than." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Impractical" means "not practical," "practical" means "disposed to action as opposed to speculation or abstraction," and "ascertain" means "to find out or learn with certainty." *Merriam-Webster's Collegiate Dictionary* (11th ed). The CVRA constrains the trial court to ordering a defendant to pay replacement value only if the fair market value is not capable of being ascertained without

speculation or abstraction. It does not provide the trial court with unlimited discretion to order a defendant to pay replacement value. In defendant's case, the fair market value of the police vehicle was impossible for the trial court to practically ascertain because newly purchased police vehicles need extensive modification, and there is no market for used police equipment. The trial court did not arbitrarily require defendant to pay replacement costs. We conclude that the CVRA is not unconstitutional as applied to defendant.

## IV. INEFFECTIVE ASSISTANCE

Defendant raises several interrelated issues regarding the effectiveness of counsel at his *Crosby* hearing and at his restitution hearing. These issues are only partially preserved. A defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Defendant requested a *Ginther* hearing to determine his first attorney's effectiveness after he had allegedly failed to communicate with defendant. Therefore, this argument is preserved. However, defendant did not argue before the trial court that he was entirely deprived of counsel at a hearing. Nor has defendant preserved his claims that he was provided ineffective assistance of counsel at his restitution hearing. Therefore, these arguments are unpreserved.

Both the Michigan and United States Constitutions guarantee a criminal defendant the right to the effective assistance of counsel. *People v Pickens*, 446 Mich 298, 318-319; 521 NW2d 797 (1994). See US Const, Am VI; Const 1963, art 1, § 20. To prove that defense counsel was not effective, the defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The defendant must also show that there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Id*. at 694; *Pickens*, 446 Mich at 312. Counsel's failure to meet with defendant does not fall below an objective standard of reasonableness when the record indicates that counsel was sufficiently prepared to provide effective assistance. *People v Payne*, 285 Mich App 181, 189; 774 NW2d 714 (2009). Additionally, to establish prejudice, the defendant must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *People v Trakhtenberg*, 493 Mich 38, 56; 826 NW2d 136 (2012) (cleaned up). Because a defendant must establish both prongs of the test, this Court may reject an ineffective-assistance claim for lack of prejudice alone. *People v Reed*, 449 Mich 375, 400-401; 535 NW2d 496 (1995).

In this case, defendant's first attorney moved for resentencing with a detailed argument about why resentencing was appropriate. That he did not meet with defendant more than once does not establish that he provided ineffective assistance. Additionally, because the trial court was not required to hold a hearing to determine whether to resentence defendant, and the court decided that it would not hold such a hearing, defendant could not have been prejudiced by any failure of his first attorney to meet with him after the attorney moved for resentencing. Nor can he establish that he was prejudiced when the replacement counsel appointed for his restitution hearing did not meet with him before the trial court decided not to resentence defendant. We conclude that defendant has not demonstrated the ineffective assistance of counsel at his *Crosby* proceedings.

-10-

Regarding defendant's argument that he was entirely denied the assistance of counsel at a hearing, this argument mischaracterizes the record. At the first restitution hearing, defendant's first attorney moved to withdraw as defendant's counsel on the basis that he and defendant did not agree about trial strategy. At that point, the parties had already discussed *Crosby* procedures, and the court indicated that it had moved to the restitution hearing. The trial court determined that the initial matter to discuss before defendant's restitution proceeding was his request to substitute counsel. It ultimately allowed defendant's counsel to withdraw and rescheduled the restitution hearing.

Following the trial court's decision, defendant asked to make a statement. A colloquy ensued regarding whether experienced attorneys in general had experience with *Crosby* remands. During that colloquy, the prosecution indicated that defendant's first counsel had been appointed for the restitution hearing, and the trial court commented, "It just so happened timing-wise and the way the appellate process worked that that all comes back down here at the same time and is here at the same time." The trial court did not indicate that defendant's first attorney had not been actually appointed to represent defendant during the *Crosby* proceedings. Defendant has not established that he was entirely deprived of counsel during his *Crosby* proceedings.

Defendant argues that trial counsel provided ineffective assistance by failing to present a proximate causation argument to the trial court at his restitution hearing. However, counsel is not ineffective for failing to make futile arguments. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As previously discussed, the trial court did not err by determining that the jury's verdict necessarily included a finding that Deputy Whitaker's death was proximately caused by defendant's decision to flee and elude. Regardless of how trial counsel presented this argument to the trial court, it would have failed.

Next, defendant argues that trial counsel provided ineffective assistance by failing to investigate the compensation that may have been paid to Deputy Whitaker's family. On the basis of the existing record on this unpreserved issue, we conclude that defendant has not overcome the presumption that defense counsel provided effective assistance.

The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). This Court gives defense counsel wide discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *Pickens*, 446 Mich at 325. However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel always retains the duty to make reasonable investigations and exercise professional judgment in matters related to the defense. *Id.* at 52-53. When considering an unpreserved ineffective-assistance issue, this Court must consider the possible reasons for counsel's actions. *Vaughn*, 491 Mich at 670.

As previously stated, the CVRA provides that "[t]he court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss . . . ." MCL 780.766(8). As indicated earlier, during a motion before the restitution hearing, defendant sought information about expenses incurred by Deputy Whitaker's family. His counsel at that time stated that he was satisfied with the discovery he received. At the restitution hearing, defense counsel reiterated that the expenses incurred by the

Whitaker estate had previously been stipulated to during the prior hearing. More importantly, at the restitution hearing, defense counsel repeatedly conferred with defendant regarding which arguments defendant wished to raise. Defense counsel raised three additional arguments following conferences with defendant, but these issues did not include compensation to Deputy Whitaker's family. Finally, while defendant claimed that he would attach supporting documentation for other compensation to his *in propria persona* brief following the restitution hearing, his brief contained no such attachment. A possible reason for counsel's failure to raise an issue concerning the compensation to Deputy Whitaker's family was that there was simply no evidence that the Whitaker family had in fact received other compensation. We conclude that there is no error apparent from the record regarding whether counsel effectively investigated the restitution owed to the Whitaker family.

Defendant argues that counsel provided ineffective assistance in a variety of evidentiary ways. We conclude that deficient actions regarding establishing the market value of the vehicle could not have affected the outcome of defendant's case because the trial court determined that a market value could not be established, and a relevance objection to the prosecution's evidence would have been futile.

Defendant argues that counsel provided ineffective assistance by providing the Kelley Blue Book value of the wrong year of Chevrolet Impala and by failing to investigate the value of vehicles sold at police auctions. Defendant has not established that an error affected the outcome of his case.

Because a defendant must establish both prongs of the ineffective assistance of counsel test, this Court may reject an ineffective-assistance claim for lack of prejudice alone. *Reed*, 449 Mich at 400-401. In this case, the trial court held that the Kelley Blue Book value was not sufficient for it to find the value of the destroyed Impala "given the complexities of purchasing and outfitting police vehicles," and it concluded that the replacement value was appropriate. Because the trial court did not base its decision on the market value of the vehicle, the actual value of the vehicle—as established by either the Kelley Blue Book value or the value of the vehicle as sold at a police auction—would not have affected the outcome of defendant's case.

Defendant also argues that trial counsel should have objected to the prosecution's documentary evidence. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less likely to be true. MRE 401. A fact of consequence is a fact that "is within the range of litigated matters in the controversy." *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 731; 761 NW2d 454 (2008). In this case, the prosecution admitted several invoices to support the fleet manager's testimony. Because the value of the replacement equipment was a matter in controversy, the prosecution's invoices for similar equipment made the proposed value of litigated pieces of equipment in controversy more likely to be true. Counsel was not ineffective for failing to raise this futile challenge. See *Ericksen*, 288 Mich App at 201.

## V. CONCLUSION

In Docket No. 351719, we affirm defendant's sentence following his *Crosby* remand. In Docket No. 354239, we remand for the trial court to amend its restitution award to reduce the

restitution obligations to the sheriff's department for the costs of the prisoner screen and siren, but we affirm in all other respects. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Michelle M. Rick