*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANDREW JAMES GRUBER,

Defendant-Appellant.

UNPUBLISHED
November 4, 2021

No. 352655
Allegan Circuit Court
LC No. 18-021664-FC

Before: RONAYNE KRAUSE, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant Andrew James Gruber was convicted by a jury of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b), and one count of accosting a minor for immoral purposes, MCL 750.145a. Defendant was sentenced to 25 to 75 years' imprisonment for the CSC-I conviction, to 57 to 180 months' imprisonment for each CSC-II conviction, and to 17 to 48 months' imprisonment for the accosting conviction. We affirm.

## I. BACKGROUND

This case stems from defendant's sexual abuse of the victim, who is defendant's stepdaughter. The sexual assaults occurred between 2013 and 2016 when defendant and the victim lived in the same home in Michigan. The victim's mother, the victim's twin sister, and defendant's mother also lived in the home. The victim testified that defendant penetrated her anus with his finger on multiple occasions when they were alone in his bedroom. The victim also testified that defendant would place her hand over his "groin area" or penis and then force her to apply pressure to that area. This occurred on at least two occasions. According to the victim, the assaults would occur in the upstairs bedroom that defendant shared with the victim's mother in the mornings before she went to school.

In February 2018, the victim disclosed the abuse. At the time the victim made the disclosure, the victim and her twin sister were living with their father, their stepmother, and their step-grandparents in Pennsylvania. The assaults were reported to law enforcement in Pennsylvania, and the victim submitted to forensic interviews. The matter was later turned over

to law enforcement in Michigan. Defendant was charged with one count of CSC-I, two counts of CSC-II, and one count of accosting a minor for immoral purposes. Defendant, who testified in his own defense at trial, was convicted as charged and sentenced as described above. This appeal followed.

## II. IMPARTIAL JURY

Defendant argues that he was denied his constitutional right to an impartial jury because the trial court improperly refused to excuse two jurors for cause. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews de novo the constitutional question of whether a defendant was denied the right to an impartial jury. See *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). The decision to grant or deny a juror challenge for cause is within the discretion of the trial court. *People v Williams*, 241 Mich App 519, 521-522; 616 NW2d 710 (2000). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Burger*, 331 Mich App 504, 510; 953 NW2d 424 (2020) (quotation marks and citation omitted). "This Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522.

## B. ANALYSIS

"A defendant tried by jury has a right to a fair and impartial jury. During their deliberations, jurors may only consider the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997) (citations omitted). In order to determine "whether an error in refusing a challenge for cause merits reversal," the following must be established:

> [T]here must be some clear and independent showing on the record that: (1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable. [*People v Legrone*, 205 Mich App 77, 81; 517 NW2d 270 (1994) (quotation marks and citation omitted).]

There are several grounds that would justify a challenge for cause. MCR 2.511 provides, in relevant part, as follows:

> (D) The parties may challenge jurors for cause, and the court shall rule on each challenge. A juror challenged for cause may be directed to answer questions pertinent to the inquiry. It is grounds for a challenge for cause that the person:

> * * *

> (2) is biased for or against a party or attorney;

-2-

(3) shows a state of mind that will prevent the person from rendering a just verdict, or has formed a positive opinion on the facts of the case or on what the outcome should be[.]

When it is demonstrated that "a prospective juror comes within one of the categories enumerated" in MCR 2.511(D), "then the trial court is without discretion" and "must" excuse the juror for cause. *People v Walker*, 162 Mich App 60, 64; 412 NW2d 244 (1987). "Otherwise, the decision to excuse for cause is within the discretion of the trial court." *Id*.

In this case, during voir dire, potential juror SK was asked whether she could be a fair juror. SK responded that her half sister had been "abused when she was probably seven" years old. The trial court asked SK whether she could set aside those circumstances and consider the law and the evidence fairly, and SK responded, "I will do my best." When defense counsel asked SK if she had "some hesitancy" about being fair, SK responded "[a] little." Defense counsel then asked whether the "hesitancy translated to prejudice against the Defendant," and SK responded in the affirmative. SK acknowledged that it would be "tough" to be a fair juror because of the allegations and that she could "[p]robably not" be a suitable juror. After defense counsel moved to dismiss SK for cause, the prosecutor argued that SK had previously acknowledged that she could be "fair and impartial" and that defense counsel had "asked several leading questions[.]" The prosecutor noted that it was "tough subject matter for everybody." The trial court then questioned SK. When the trial court asked SK whether she could set aside any prejudice and decide the case based on the facts and the law, SK responded "It's just really hard . . . . I mean, it's hard for everybody. But I think it's just a tough topic." The trial court denied the motion to remove SK for cause, and defense counsel used a peremptory challenge to remove her.

Defendant argues that SK should have been excused for cause because she stated unequivocally that she could not be fair to defendant. However, a juror does not have to be excused if the juror can "set aside [his or] her previous opinion" in order to "render a fair and impartial verdict." See *People v Lee*, 212 Mich App 228, 251; 537 NW2d 233 (1995). In this case, SK did not explicitly use the word "prejudice" or state that she could not be fair and impartial. Instead, her responses to questions about her ability to be fair were "[i]t's tough," "[i]t's just really hard," and "I'll try my best." When the trial court attempted to clarify whether SK could judge fairly despite her difficulty, SK stated that it would be "hard" in light of the "tough topic." The only certain responses that SK gave was saying "[a] little," when defense counsel asked if she had "some hesitancy" about being fair, and answering, "Mmmhmm," when asked if the "hesitancy translated to prejudice against defendant." However, these statements were not declarations that SK could not set aside her views. Rather, the statements demonstrate hesitancy about the "subject matter."

We therefore conclude that the trial court did not abuse its discretion by concluding that SK's ambivalence did not demonstrate that she was biased against defendant, or that she had firmly made up her mind about the case on the basis of her personal experience. SK's statements that it would be "difficult" stopped short of stating that she would not judge fairly, and we defer "to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522. For these reasons, it was within the range of reasonable and principled outcomes for the trial court to conclude that SK did not meet the criteria for dismissal for cause under MCR 2.511(D). Furthermore, SK was not a part of the jury that

considered the evidence against defendant because defendant could, and did, keep her from serving on the jury by exercising a peremptory challenge.

No such alternative avenue was available when defense counsel asked the trial court to dismiss a second juror for cause, however. During voir dire, juror DE informed the trial court that he had worked with a retired detective who had engaged in "small talk" about abuse cases. When the trial court asked whether that association would "impact" his ability to fairly judge the case, DE responded "I believe it would." However, DE later confirmed for the prosecutor that he understood that defendant was "innocent until proven guilty," and he indicated that he "would try" to evaluate all the witnesses' credibility on an equal basis. DE also stated that he had briefly met a detective who was a witness in the case when that detective "stopped by" DE's place of employment to speak with the retired detective. When asked whether he would "weigh [the detective's] testimony the same as any of the other witnesses," DE responded "[s]ure."

Defense counsel then questioned DE. DE told defense counsel that he would "try [his] best" to be fair, but answered affirmatively when counsel asked DE if he lacked confidence in his ability to be fair and to be a "good juror[.]" The trial court asked DE whether he was concerned that his relationship with the retired detective would be impaired by a not guilty verdict, and DE answered, "I think he would be okay with that." The trial court then asked DE if he could "make a decision based on the facts that [were] presented in th[e] case and the law[.]" DE responded "Yes." The trial court then denied defendant's challenge for cause. DE served on the jury.

Despite DE's expressed concern about his impartiality, he ultimately stated that he would be able to evaluate the evidence without prejudice and according to the law. Jurors are "presumed to be . . . impartial until the contrary is shown," and "[t]he burden is on the defendant to establish that a juror was not impartial or at least that a juror's impartiality is in reasonable doubt." *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008) (first alteration in original; quotation marks and citation omitted). "[A] juror's expressed lack of prejudice and ability to render an impartial verdict are all that is required to uphold selection of the juror." *People v Hughes*, 85 Mich App 8, 18; 270 NW2d 692 (1978). In this case, the trial court determined that DE could judge the evidence fairly, and we defer "to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Williams*, 241 Mich App at 522. Therefore, we conclude that the trial court did not abuse its discretion by denying the motion to excuse DE for cause. Defendant is not entitled to a new trial.[1]

---

[1] We acknowledge defendant's reliance on *Hughes v United States*, 258 F3d 453 (2001) (CA 6, 2001) and *Wolfe v Brigano*, 232 F3d 499 (CA 6, 2000). However, we are not bound by those holdings. See *People v Patton*, 325 Mich App 425, 434 n 1; 925 NW2d 901 (2018). Moreover, *Hughes* and *Wolfe* are not persuasive because the facts in those cases are distinguishable from the facts herein. In *Hughes*, the juror at issue affirmatively stated "I don't think I could be fair," and the issue was whether counsel had been ineffective for failing to remove the juror, despite the petitioner's request to counsel and despite not exhausting his peremptory challenges. In *Wolfe*, the trial court refused to remove four jurors for cause at defendant's request, even though they all expressed doubt that they could be fair and impartial, there were objective reasons why three of

-4-

### III. EXCLUSION OF EXPERT TESTIMONY

Defendant argues that the trial court abused its discretion when it excluded certain expert testimony at trial. We disagree.

### A. STANDARD OF REVIEW

We review a trial court's decision whether to admit expert witness testimony for an abuse of discretion. *People v Matuszak*, 263 Mich App 42, 47; 687 NW2d 342 (2004).

### B. ANALYSIS

"The trial court has an obligation under MRE 702 to ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and citation omitted). Under MRE 702, when admitting expert testimony, trial courts must determine whether "the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

In *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), our Supreme Court limited expert witness testimony in child sexual abuse cases: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." However, the *Peterson* Court clarified that an expert witness may testify: (1) "in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim," and (2) regarding "the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility." *Id*. at 352-353. Our Supreme Court explained that expert testimony regarding the percentage rate at which children lie about sexual abuse improperly vouches for the credibility of the child victim. *Id*. at 375-376.

In *People v Thorpe*, 504 Mich 230, 254; 934 NW2d 693 (2019), our Supreme Court explained that experts in child sexual abuse cases may be questioned about whether children lie to or manipulate others because such questions elicit testimony regarding "discrete, straightforward, and uncontroversial questions of fact." However, the Court reiterated the principle expressed in *Peterson* that the prosecution may not elicit expert testimony regarding the percentage rate of children who lie about child sexual abuse because such testimony improperly vouches for the veracity of the victim. *Id*. at 259-260.

The trial court in this case qualified Thomas Cottrell as an expert in the area of "child sexual assault behavior" on the basis of his education and extensive experience. During the

---

them could not possibly be impartial, and the trial court erred by relying on "tentative statements that they would try to decide this case on the evidence presented at trial." In short, *Hughes* and *Wolfe* entailed significantly more egregious situations.

prosecutor's case-in-chief, Cottrell testified about the general characteristics of children who are sexually abused, including delayed disclosure, issues with memory, and inability to specify dates and times. The following exchange took place between Cottrell and defense counsel during cross-examination:

> *Q.* [W]hen you talk about delayed disclosure, your understanding or your study of—is that fair to say, "study"?
>
> *A.* Sure.
>
> *Q.* Or "studied". Okay. Does that always assume, in your study, that those disclosures are truthful? Follow what I am saying?
>
> *A.* Yes. The research that I've read, yes, usually makes the presumption that what is disclosed is—that there is truth in that disclosure, yes.
>
> *Q.* Okay. And—*but it's also true that kids do fabricate, correct*?
>
> *A.* Generically or about a disclosure of—allegation of sexual abuse in particular? [Emphasis added.]

At that point, the trial court instructed the attorneys to approach the bench, and the prosecutor indicated that she was "going to . . . object to th[e] line of questioning." The trial court instructed the jury to leave courtroom. The trial court then indicated as follows:

> I have had the opportunity to have testimony from Mr. Cottrell on numerous occasions and I am fairly certain what his answer to the next questions would be. And my understanding is that that would be exactly what the Supreme Court said we cannot do in the case of the *People v Thorpe*. Because what it does is, it allows the expert to basically take the issue of credibility away from the jury by saying that the percentage of kids that lie in your experience is—I forget what your number is.

Cottrell informed the trial court that his testimony would be that less than five percent of disclosures are false, "if I am asked to generate a number." The trial court then continued:

> And . . . the Supreme Court in *People v Thorpe*, which this Court is very familiar with since it was a trial in this court, essentially said that by allowing an expert witness to testify that that number of children would lie about sexual abuse is attesting to the credibility of the victim in this case. . . . So I can't allow you to go down that road.

Defense counsel clarified that he was going to ask whether children lie in sexual abuse cases, and the trial court responded, "And that's going to be a complete and total violation of the *Thorpe* ruling."

We conclude that defendant's question to Cottrell "but it's also true that kids do fabricate, correct?" was a proper question that did not violate *Thorpe*. Under *Thorpe*, this is the type of

"discrete, straightforward, and uncontroversial question[s] of fact" on which experts in child sexual abuse cases may be cross examined. *Thorpe*, 504 Mich at 254. Indeed, defendant's question appears to have been intended to make the obvious point that anyone, even children in sexual assault cases, can lie. The trial court explained that it intervened early in the questioning because it had anticipated, albeit prematurely, that Cottrell was going to improperly vouch for the victim's credibility by using statistics or personal experiences. We commend the trial court's caution and efforts to preclude a potentially critical error, or even a mistrial, from occurring. However, the trial court went too far. In *Thorpe*, our Supreme Court held that an expert witness could not implicitly vouch for a victim by offering testimony suggesting the near-impossibility that the victim had lied. Our Supreme Court did not forbid experts from undermining the credibility of victims by merely affirming that children do, indeed, sometimes lie. Cottrell made it clear that he only intended to specify a percentage if he was asked to do so.[2]

Nevertheless, under the circumstances of this case, the trial court's error was harmless. An error is harmless if it affirmatively appears that it is more probable than not that the error was outcome determinative. *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). Extensive testimony was elicited concerning the victim's credibility and her motivation to fabricate the allegations of abuse. Indeed, the victim testified that she did not report the abuse to her mother because she did not think that her mother would believe her. The victim also agreed that she did not have a good relationship with defendant and that the victim and her twin sister did not like living with defendant. This testimony was supported by the testimony of the victim's twin sister.

Additionally, defendant presented other evidence to support that the victim was not being truthful about the allegations. The victim's maternal great-grandmother testified that the victim is "brilliant" and "could be a little manipulative[.]" The victim's maternal grandmother and the victim's paternal great-aunt testified that they did not notice that the victim was unhappy or depressed at any relevant time. Importantly, during cross-examination of the victim's paternal great-aunt, the following line of questioning occurred between the prosecutor and the victim's paternal great-aunt:

> *Q.* Do you think it's possible that when [the victim] was out and about she put on a happy face, even though maybe inside she wasn't feeling that way?
>
> *A.* Not really.
>
> *Q.* You don't think that's possible.
>
> *A.* There is a slim possibility. But no, I don't think that she would put on a face.

---

[2] We hope that both attorneys would have known better than to ask such a question, but it would have been entirely proper for the trial court to expressly forbid either attorney from asking Cottrell for a percentage and to expressly order Cottrell not to volunteer a percentage.

*Q.* Well, how about this, how about the fact that maybe [the victim] was happy because she was away from the home where the abuse was happening? What about that?

*A.* I don't believe that for one minute.

The victim's mother testified in defendant's defense. She indicated that she was in "shock" when she heard the allegations and noted that she did not believe them because she knew defendant's "heart." The victim's mother also noted that she and defendant would come downstairs at the same time in the mornings during the school year and that she would immediately take the victim to school. The victim's mother testified that she never observed the victim to be unhappy or uncomfortable around defendant and her testimony supported that she believed that the victim was being "coached." When asked, the victim's mother confirmed that she believed defendant, who denied the allegations, over the victim.

Defendant's mother also testified in his defense. When asked why she believed everyone was "there," defendant's mother indicated that defendant had "been accused of something he didn't do[.]" Defendant's mother testified that she knew that the allegations were false because she "was there," i.e., she was home "all of the time." Defendant's mother also testified that defendant was never alone with the victim, that the victim and her twin sister were always together in the mornings, and that the victim's mother would stay upstairs with defendant in the mornings. Defendant's mother also denied that the victim went upstairs in the mornings before school.

Thus, the testimony of the victim's mother, the victim's great-grandmother, and the victim's great-aunt supports defendant's theory that the victim was fabricating the abuse. Given their close relationship with the victim at all relevant times and given the fact that Cottrell agreed that he had never met or interviewed the victim, it is unlikely that the jury placed significant weight on the fact that Cottrell was not able to testify as to whether children lie about sexual abuse. Indeed, the fact that some of the victim's family members did not believe her allegations was damaging evidence concerning the victim's credibility. Moreover, during closing argument, defense counsel stated, "I think all of you know that sometimes kids fabricate things," and the trial court instructed the members of the jury that they were able to utilize their "common sense and general knowledge" when reaching a verdict. Because defendant was able to present a myriad of evidence to support that the victim was not credible, it is not more probable than not that the trial court's decision to exclude certain evidence from Cottrell undermined the reliability of the verdict.

IV. EXCLUSION OF EVIDENCE CONCERNING THE VICTIM'S PRIOR ALLEGATIONS OF SEXUAL ABUSE

Defendant argues that his constitutional rights to present a complete defense and to confrontation were violated by the trial court improperly thwarting his attempt to elicit testimony that the victim had made prior false claims that she had been sexually assaulted. We disagree.

A. PRESERVATION AND STANDARD OF REVIEW

Defendant did not raise constitutional arguments before the trial court in relation to the victim's alleged previous false claims of sexual assault. Therefore, the constitutional issues are unpreserved. See *People v Solloway*, 316 Mich App 174, 197; 891 NW2d 255 (2016) (holding

that to preserve a constitutional issue, the issue "must be raised before and considered by the trial court"). Unpreserved issues "are reviewed for plain error affecting substantial rights." *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020).

> To avoid forfeiture under the plain error rule three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Reversal is warranted only if the plain error resulted in the conviction of an innocent defendant or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 653 (quotation marks and citation omitted).]

## B. ANALYSIS

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ." *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011) (alterations in original), quoting US Const Am VI. "Since its birth as a state, Michigan has also afforded a criminal defendant the right to " 'be confronted with the witnesses against him.' " *Fackelman*, 489 Mich at 525 (citations omitted). The right "to present a complete defense" is a fundamental right afforded to criminal defendants. *Crane v Kentucky*, 476 US 683, 690; 106 S Ct 2142; 90 L Ed 2d 636 (1986). Nevertheless, it is not absolute. The protections of the Sixth Amendment may "bow to accommodate other legitimate interests in the criminal trial process." *Michigan v Lucas*, 500 US 145, 149; 111 S Ct 1743; 114 L Ed 2d 205 (1991) (quotation marks and citations omitted). Indeed, courts have "wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id*. (quotation marks and citation omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *Solloway*, 316 Mich App at 198 (quotation marks and citation omitted).

The rape-shield statute, MCL 750.520j, generally bars evidence of a victim's prior sexual activity that is not related to the alleged offense. *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d 531 (2014). In *People v Hackett*, 421 Mich 338, 348; 365 NW2d 120 (1984), our Supreme Court explained that, in certain situations, evidence of a victim's prior sexual conduct "may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." For example, "the defendant should be permitted to show that the complainant has made false accusations of rape in the past." *Id*.

In *People v Williams*, 191 Mich App 269, 272; 477 NW2d 877 (1991), we explained that

> the rape-shield statute does not preclude introduction of evidence to show that a victim has made prior false accusations of rape. Such false accusations are relevant in subsequent prosecutions based upon the victim's accusations because the fact that the victim has made prior false accusations of rape directly bears on the victim's credibility and the credibility of the victim's accusations in the subsequent

case, and preclusion of such evidence would unconstitutionally abridge the defendant's right to confrontation.

The defendant, however, is required to make an offer of proof to justify the introduction of the evidence and to demonstrate the relevance of the evidence to the purpose for which it is sought to be admitted. *Id*. at 273.

> If necessary, the trial court should conduct an evidentiary hearing in camera to determine the admissibility of the evidence, and at the hearing, the trial court has the responsibility of restricting the scope of cross-examination to prevent questions that would harass, annoy, or humiliate the victim and to guard against fishing expeditions. [*Id*.]

In *Williams*, 191 Mich App at 273, this Court concluded that the defendant had failed "to offer any concrete evidence to establish that the victim had made a prior false accusation of being sexually abused by her uncle." We noted:

> The record does not fully set forth the facts surrounding the prior instance. Apparently, there was some allegation five years previously, when the victim was nine years old, that she had been molested by her uncle and that both the uncle and the victim had received counseling. No criminal charges were pursued against the uncle and, therefore, there had never been a determination by a court of the truth or falsity of the accusation. [*Id*. at 273 n 1.]

We explained that the defendant's attorney "had no idea whether the prior accusation was true or false and no basis for believing that the prior accusation was false. Counsel merely wished to engage in a fishing expedition in hopes of being able to uncover some basis for arguing that the prior accusation was false." *Id*. at 273-274. We concluded that the "defendant was not entitled to have the court conduct a trial within the trial to determine whether there was a prior accusation and whether that prior accusation was true or false." *Id*. at 274.

In this case, the victim's mother confirmed that she believed defendant, who had denied the allegations, over the victim. When asked by defense counsel if she was concerned about the victim's mental health, the victim's mother confirmed that she was concerned because she believed that the victim had been "coached." The following line of questioning then occurred between defense counsel and the victim's mother:

> *Q*. And has that ever taken place before?
>
> *A*. Yes.
>
> *Q*. In regards to what?
>
> *A*. [The victim] has made allegations like this twice before by a different person.

After the prosecutor objected, the trial court stated "[t]hat will be completely redacted" and then excused the jury. After the jury left the courtroom, the trial court informed defense counsel

that the question was "inappropriate." Still outside the presence of the jury, the trial court then permitted the prosecutor to question the victim's mother. The following line of questioning occurred:

> *Q*. So tell me about this allegation that she's previously made.
>
> *A*. [The victim] had expressed that [defendant's] nephew . . . and also my Uncle . . . had done "bad things" to them.
>
> \* \* \*
>
> *Q*. And what were these bad things?
>
> *A*. They said that they were touching them inappropriately.[3]

The victim's mother indicated that she had not reported these allegations to law enforcement. Instead, she had spoken to her uncle and to defendant. The victim's mother confirmed that there was never an investigation into these allegations, but she believed that the allegations were false because the victim later "told the truth about it." The trial court stated "I don't need anymore," did not permit the prosecutor to engage in further questioning, and indicated that the evidence was "inadmissible." When the jury returned to the court room, the trial court stated "[t]he jury is to disregard and completely ignore the last statements by the witness. And it will be stricken from the record." Defense counsel then continued his examination of the victim's mother.

We conclude that, like the defendant in *Williams*, defendant in this case failed to offer any concrete evidence to establish that the victim had made prior false accusations of sexual abuse. Instead, it appears that the victim's mother concluded that the victim had made false allegations based on conversations that she had with defendant, the victim's great-uncle, and the victim. While the trial court only permitted limited questions to be asked, defense counsel did not attempt to offer additional evidence to support that the victim's prior allegations were false and, when the trial court indicated on the record that defense counsel had knowingly asked an "inappropriate question" to which he knew the answer, defense counsel indicated on the record that he "did not." At no point did defense counsel seek to make an offer of proof regarding the admissibility and relevancy of the evidence.[4] Because defendant failed to make an offer of proof that would support the conclusion that the victim had actually made prior false allegations of sexual assault, *Williams*, 191 Mich App at 273, he is not entitled to the relief that he seeks, *Hackett*, 421 Mich at 351; see also *People v Byrne*, 199 Mich App 674, 678; 502 NW2d 386 (1993) ("Absent a sufficient showing of relevancy in the offer of proof, the motion for admission, whether presented at trial or in limine,

---

[3] It appears that the victim's mother was referring to the victim and her twin sister.

[4] Defendant does not argue that defense counsel was ineffective for failing to seek admission of evidence concerning the victim's alleged prior false allegations of sexual abuse.

-11-

must be denied.").[5]  Because defendant has not established that relevant, admissible evidence was excluded, defendant has failed to establish plain error.

## V.  JUDICIAL MISCONDUCT

Defendant next argues that the trial judge's hostile demeanor toward defense counsel and the victim's mother denied him a fair trial.  We disagree.  Because defendant did not object to the trial court's rulings or statement on the basis of judicial misconduct, we review for plain error affecting substantial rights.  See *Spaulding*, 332 Mich App at 652.

In determining whether a trial judge's conduct deprives a defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015).  "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id.*  This is a fact-specific inquiry, and this Court considers the "cumulative effect" of any errors. *Id.* at 171-172.

In evaluating the totality of the circumstances, this Court must consider a "variety of factors," including the following: (1) the nature of the conduct itself (belittling counsel, inappropriate questioning of witnesses, inappropriate commentary, etc.), (2) "the tone and demeanor the trial judge displayed in front of the jury," (3) the scope of judicial intervention given the length or complexity of the trial, (4) the extent to which the conduct was directed at one side over the other, and (5) "the presence or absence of a curative instruction." *Stevens*, 498 Mich at 172-177.

In this case, after the jury had been removed from the courtroom because the victim's mother had testified about alleged prior false allegations, the trial court informed defense counsel that the question and response were inappropriate, that counsel knew that they were inappropriate, and that counsel should have directed the witness to avoid such impropriety.  When defense counsel asserted that he was not at fault, the trial court reminded counsel that they were off the record.  The trial court then stated, "This is . . . mistrial type stuff right here.  You want to do this again? . . .  You've been trying to get in—witnesses have been trying to get in impermissible

---

[5] Even if we were to engage in the presumption that defense counsel might have believed it would be futile to make an offer of proof to the trial court, defendant still does not provide an offer of proof on appeal.  Defendant argues that the victim's mother "testified that [the victim] acknowledged that the prior accusations were false," but that misrepresents her testimony.  Rather, the victim's mother testified that she "believe[d] they were false because [the victim] had told the truth about it."  Thus, her testimony was more limited and essentially only reiterated what had already been established: that she chose to believe the version of events favoring defendant over the version of events favoring the victim.

statements throughout this entire trial on behalf of the defense." After questioning the victim's mother regarding the testimony in question, the trial court concluded as follows:

> This trial has to be followed according to the law or held according to the law. There has been, in this court's opinion, an attempt by all of the witnesses for the defense to insert information into this trial that's not legally appropriate. In fact, a witness has argued with the court about the court's rulings.
>
> The court will consider sanctions. The statement made by the mother was inadmissible, completely, clearly inadmissible under the law. And even when the court advises witnesses that they can't do something, they are arguing—they are arguing with the Court.
>
> And I do hold the attorneys responsible for the behavior of their witnesses.
>
> So the Court will strike the testimony and will advise the jury to ignore the testimony.
>
> Anything further?

Defense counsel sought to comment about being held responsible for his impropriety, but the trial court ended the discussion and ordered that the jury return to the courtroom. The court instructed the jury to "disregard and completely ignore the last statements by the witness," which would be "stricken from the record." Defense counsel then resumed his examination of the victim's mother.

Defendant argues that the trial court displayed hostility that signaled to the jury that the victim's mother was not a reliable witness. Although the trial court certainly exhibited frustration concerning defense counsel's questioning of the victim's mother and the victim's mother's response, the trial court made these statements outside the presence of the jury. The only pertinent communication to the jury was the instruction that it was not to consider the inadmissible testimony. There is no indication that this instruction resulted in the jury being suspicious of defense counsel or the victim's mother, however. Indeed, the trial court instructed the jury, in relevant part, as follows:

> [The] comments I make, rulings, questions, and instructions [are] not evidence.
>
> It is my duty to see that the trial is conducted according to the law and to tell you the law that applies to this case. If I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an opinion about how you should decide the case, you must pay no attention to that opinion. You are the only judges of the facts, and you should decide this case from the evidence.

We must assume that the jurors followed this instruction. See *Stevens*, 498 Mich at 177. We conclude that the instruction was sufficient to protect defendant's substantial rights, especially

-13-

when considering that the trial took place over the course of three days and that the trial court also excluded certain evidence that the prosecution attempted to introduce. In sum, the totality of the circumstances does not demonstrate a reasonable likelihood that the trial court's conduct "improperly influenced the jury by creating the appearance of advocacy or partiality against defendant." See *Stevens*, 498 Mich at 164. Thus, defendant has failed to demonstrate plain error and is not entitled to a new trial.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron
/s/ Michelle M. Rick